**Charles F. SYLLA, Plaintiff,**

v.

**MASSEY–FERGUSON, INC., Defendant.**

**Civ. No. 80–30029.**

United States District Court,
E.D. Michigan, S.D.

Feb. 13, 1984.

Dennis M. Day, Plunkett, Cooney, Rutt, Watters, Stanczyk and Pedersen, Detroit, Mich., for plaintiff.

Ronald R. Pawlak, Birmingham, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff brought this action seeking to recover damages from the defendant because a farm tractor purchased from EMC, Inc., a dealer in farm equipment, allegedly did not perform properly. The action is based on theories of negligent design and breach of Uniform Commercial Code warranties, including M.C.L. 440.2313, 2314 and 2315. On August 12, 1982, this matter was referred to United States Magistrate Harvey D. Walker as Special Master, to conduct proceedings and file a report of his findings, including a recommendation of judgment. On October 26, 1982, Special Master Walker recommended that judgment in the amount of $12,000.00 be entered in favor of plaintiff and against defendant Massey-Ferguson. This recommendation was in accordance with the verdict of a jury empanelled by the Special Master to decide the factual issues presented by plaintiff's complaint.

This matter is presently before the Court on defendant's objection to the recommendation. The Court notes that defendant's motion includes five grounds for objection. However, defendant has briefed only two grounds and the Court will therefore consider only those objections supported by a brief.

First, the defendant asserts that the proceedings of the Special Master were improper in that he failed to report specific findings, thereby preventing the Court from conducting a proper review. Second, the defendant argues that the Master's instructions to the jury were erroneous, and therefore his recommendation was based on an incorrect application of Michigan law. Because the Court agrees that the jury was improperly instructed, it is not necessary to address defendant's objection to the form of the proceedings before the Master. Prior to discussing the question of the applicable Michigan law, a brief statement of the relevant facts is necessary.

In April of 1976, plaintiff purchased a Massey-Ferguson Model 1505 tractor from EMC, Inc. At the time of purchase, he signed a retail order form and retail installment contract and security agreement. These documents allegedly contained a limited express warranty by Massey-Ferguson and an exclusion of all implied warranties, including merchantibility and fitness for a particular purpose. These documents also allegedly disclaimed liability for special or consequential damages, including lost profits.

In May of 1979, the tractor engine "seized" during operation due to a lack of oil. Apparently the oil pressure hose had developed a leak by lying on or near the engine, resulting in a loss of engine oil. The plaintiff alleges that the engine was defectively designed in that the hose was improperly routed. After extensive repairs and some delay, the tractor was restored to operating condition. Plaintiff seeks the cost of repairs and lost profits resulting from delayed and reduced crop yields.

This case presents a novel and somewhat complex issue; whether a person that suffers a pure economic loss may proceed against a seller under product liability theories, including negligence, or whether he must proceed under principles of commercial law contained in the Uniform Commercial Code. The Special Master held that products liability law provides the governing principles in such a case.

At the outset, the Court notes that the issue as framed by the Court differs somewhat from the issue presented by the parties. In their briefs and arguments before the Master and this Court, the parties devoted substantial time and effort to the issue of privity. The plaintiff argued that since there was no privity between plaintiff and defendant, the U.C.C. cannot apply and, therefore, tort law must apply. The Master agreed, stating that since no contractual relationship existed between plain-

tiff and defendant, the U.C.C. did not govern this relationship. He therefore looked to tort law principles where privity requirements are largely a thing of the past. The defendant alleged that there was privity since the tractor dealer was an agent of Massey-Ferguson, and therefore argued that U.C.C. principles should control.

However, reliance on privity notions to resolve this choice of law question can only serve to further blur the distinction between, and applicability of, commercial law and tort law to economic losses. The historical confusion in this area of Michigan law is all too apparent. A simple reading of *Cova v. Harley Davidson*, 26 Mich.App. 602, 182 N.W.2d 800 (1970), *Southgate Schools v. West Side Co.*, 399 Mich. 72, 247 N.W.2d 884 (1976), and *Gauthier v. Mayo*, 77 Mich.App. 513, 258 N.W.2d 748 (1977) should remove all doubt that the respective use and differences between commercial law breach of warranty claims and traditional products liability claims in cases of pure *economic loss* is in any way resolved.

Much confusion in the area seems to stem from the perceived importance of the parties' relationship. This confusion can be blamed in part on the development and merger of products liability and contract theories. The Michigan Supreme Court recognized long ago that the viability of a suit for personal injury or property damage against a manufacturer should not depend on the antiquated contract doctrine of privity. The Court reasoned that the essence of a claim for personal injury or property damage, whether brought under tort or contract law, is the breach of the manufacturer's duty to provide a "safe" product. *Spence v. Three Rivers Supply*, 353 Mich. 120, 90 N.W.2d 873 (1958). Thus, when a plaintiff attempts to impose liability on a manufacturer for personal injury or property damage, he may proceed under products liability theories or commercial contract theories regardless of privity. In view of the historic impact of privity concepts on the issue of which theory a plaintiff may proceed under, it is not surprising that the parties have focused on the relationship of the plaintiff and defendant in arguing whether U.C.C. or products liability theories control the rights of the plaintiff.

A more logical and conceptually manageable approach is to begin by considering the type of loss the plaintiff is alleging. As noted above, when a plaintiff is suing for personal injury or property damage, he is essentially alleging a tort action (i.e. failure to provide a safe product), although he may proceed under a tort *or* contract theory. He may proceed under a contract theory because principles of contract law (e.g. privity) must be made to serve policy considerations governing liability placement in tort. Thus courts have not hesitated to permit products liability actions involving personal injury or property damage to proceed under tort theories of negligence as well as contract or commercial law theories of breach of warranty.

However, when a plaintiff seeks to impose liability for economic losses only, tort law concerns with product safety no longer apply, and commercial law concerns with economic expectations must govern. As stated by the Ninth Circuit in *S.M. Wilson v. Smith International Inc.*, 587 F.2d 1363, 1376 (9th Cir.1978),

> "where the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, Torts, Annual Survey of Texas Law, 25 S.W.L.J. 1, 5 (1971); Franklin, When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases, 18 Stan.L.Rev. 974, 996–97, 1012–14 (1966). To treat such a breach as an accident is to confuse disappointment with disaster.

In explaining the dichotomy between traditional contract remedies and tort remedies as they apply to economic loss, the Third Circuit stated,

> [T]he courts of most states have recognized that the principles of warranty law remain the appropriate vehicle to redress a purchaser's disappointed expectations

when a defect renders a product inferior or unable adequately to perform its intended function. [citation omitted]. These courts have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law.

\* \* \* \* \* \*

In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. ... [This distinction] bears directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.

*Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1172–73 (3rd Cir.1981).

Although these cases reflect the majority rule, they are not binding in this diversity case if Michigan law is to the contrary. Plaintiff argues that indeed, the law in Michigan permits a products liability tort action for the recovery of economic losses. Plaintiff relies on *Southgate Schools v. West Side Co.,* 399 Mich. 72, 247 N.W.2d 884 (1976) and *Gauthier v. Mayo,* 77 Mich. App. 513, 258 N.W.2d 748 (1977) in support of his argument.

In *Southgate,* plaintiff brought an action against a manufacturer of floor tiles for repair costs incurred in replacing defective tiles. The Michigan Supreme Court held that the U.C.C. statute of limitations did not apply to the action and that plaintiff could proceed under tort theories. This holding was based on a determination that the plaintiff had suffered property damage (as opposed to economic damage) and therefore the traditional rule that tort and contract remedies are available to redress personal injury and property damages permitted plaintiff to proceed under tort theories. *Southgate* can also be read as holding that economic damages do not exist in Michigan, and that even when the only damage is to the product itself, the damages are properly characterized as property damages. However, in *Southgate,* the Supreme Court was faced with a relatively narrow issue, i.e., whether the U.C.C. statute of limitations was applicable.

This Court declines to read into such a narrow holding a broad and far reaching rule that would characterize all economic losses as property damage and thus permit tort actions for strictly economic damages.

In *Gauthier v. Mayo,* a panel of the Michigan Court of Appeals held that a consumer has a cause of action against a manufacturer for economic losses resulting from a defective product without proving negligence. Thus *Gauthier* seemed to recognize a product liability action for solely economic losses. The most recent pronouncement from the Court of Appeals, however, indicates that *Gauthier* does not represent the current law in Michigan. In *McGhee v. GMC,* 98 Mich.App. 495, 296 N.W.2d 286 (1980), the Court of Appeals adopted the reasoning of *S.M. Wilson v. Smith International, supra,* and held that with pure economic loss, contract law provides the appropriate remedy. The *McGhee* court took Michigan law one step beyond *Southgate* and *Gauthier* by adopting the following language:

"A distinction should be made between the type of 'dangerous condition' that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory.

"The Uniform Commercial Code was adopted by the Legislature as a comprehensive and integrated act to facilitate the continued expansion of commercial

practices. * * * For sales of products the above purpose is carried out by Article 2 of the Code, which supplies a complete framework of rights and remedies for transacting parties. In light of the Code's scope and purpose, its terms should not be nullified by applying strict liability when the parties have contracted otherwise. Such an expansion of strict liability would frustrate the Code's purposes of codifying the law of commercial transactions by displacing its applicability in all cases where the sale of faulty products is involved. Some losses resulting from product transactions are best covered by contract liability under the Code." *McGhee* at 505–06, 296 N.W.2d 286.

Thus the Court believes that Michigan law now comports with the majority rule in this area and does not permit tort actions in cases of pure economic loss. The Court is persuaded that this holding is necessary to prevent the effective emasculation of U.C.C. warranty laws. If the Court were to follow plaintiff's interpretation of *Southgate,* a party that suffered neither personal injury nor property damage, but only failed to receive the quality of product he expected, as the plaintiff did in the present case, could sue on tort theories and thus avoid the body of law designed to govern the failure of economic expectations—the U.C.C.. This would constitute an impermissible infringement upon the scheme provided by the U.C.C.. The code allows parties to limit or eliminate warranty protections, to exclude or restrict consequential damages, provides notice requirements and even establishes a statute of limitations. These rules determine the quality of product a manufacturer must deliver, and prevent the manufacturer from being held liable for damages of unknown and possibly unlimited scope. Although these same rules may well interfere with tort principles of just compensation, they function well in a commercial setting.

In conclusion, the Court believes that under Michigan law, a party suffering direct and consequential economic loss may not proceed against the manufacturer under product liability theories. The Uniform Commercial Code provides the source of a plaintiff's rights when he suffers pure economic loss.

Accordingly, the recommendation of the Special Master is VACATED and this action will be placed on the Court's docket for further proceedings.

IT IS SO ORDERED.