CLANCY v OAK PARK VILLAGE ATHLETIC CENTER

Docket No. 76030. Submitted October 11, 1984, at Lansing.—Decided
    January 23, 1985. Leave to appeal applied for.

Charles R. Clancy paid for the use of a racquetball court at Oak
    Park Village Athletic Center. Due to a leak in the roof, a
    puddle of water formed on the floor of the court while Clancy
    was playing. He slipped on the wet floor and injured his foot.
    He filed suit against Oak Park Village Athletic Center, a
    limited partnership, and Gordon Long, the general partner of
    the partnership, in Ingham Circuit Court alleging negligence
    and breach of an implied warranty of fitness at the racquetball
    court. The court, Michael G. Harrison, J., granted defendants'
    motion for partial summary judgment on the warranty claim.
    Plaintiff appealed. *Held:*

An implied warranty of fitness does not generally apply to
    leased premises and will not be extended to cover leased
    premises under the facts of this case.

Affirmed.

1. Torts — Implied Warranty of Fitness — Leased Articles —
    Bailed Articles.

An implied warranty of fitness grounded in tort is a warranty
    implied in fact or in law and applies to products which have
    left the manufacturer's control; although such a warranty is
    usually applied to articles which have been purchased, it may
    be extended to articles which have been leased or bailed.

2. Bailment — Leases — Chattels — Latent Defect — Implied
    Warranties.

Generally, in the absence of an agreement to the contrary, the
    bailor of a chattel to be used by the bailee for a particular
    purpose known to the bailor impliedly warrants the reasonable
    suitability of the chattel for the bailee's known intended use of

---

References for Points in Headnotes

[1] 63 Am Jur 2d, Products Liability § 187 *et seq.*
[1-3] 63 Am Jur 2d, Products Liability §§ 198, 199.
    Warranties in connection with leasing or hiring of chattels. 68
    ALR2d 850.
[2] 63 Am Jur 2d, Products Liability §§ 202-204.

it; the implied warranty is said to be raised by the delivery of the chattel to the bailee, where the quality or fitness of the article for the use specified is not visible and the defect is not discernible by an ordinary observer; as a warranty against defects it has been said to extend to such faults and defects as would entirely prevent the contemplated use and enjoyment of the bailment, or render it dangerous, but not to those which would merely diminish its convenience and appropriateness for the use designed and it matters not that the chattel comes to the possession of the plaintiff either as lessee or bailee.

3. TORTS — IMPLIED WARRANTY OF FITNESS — LEASED PREMISES.
   Leased chattels real or premises do not carry a general implied warranty of fitness.

*Stern, Milmet, Vecchio, Goll & Carnago, P.C.* (by *James Wynne),* for plaintiff.

*Morgan & Fuzak, P.C.* (by *John F. Fuzak),* for defendant.

Before: DANHOF, C.J., and GRIBBS and R. M. SHUSTER,* JJ.

GRIBBS, J. Plaintiff appeals as of right from the trial court's order granting defendants' motion for summary judgment for plaintiff's failure to state a claim for a breach of an implied warranty of fitness. GCR 1963, 117.2(1). We affirm.

Plaintiff paid a fee for the use of defendants' racquetball court for one hour. During the first fifteen minutes of play, the roof began to leak, forming a puddle of water on the floor of the court. Plaintiff slipped while playing, crashed into the wall and injured his foot. He filed suit alleging negligence and breach of an implied warranty of fitness of the racquetball court. After a hearing on defendants' motion for partial summary judgment, the trial court granted summary judgment for defendants on the warranty claim.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

An implied warranty of fitness grounded in tort is a warranty implied in fact or in law. *Williams v Detroit Edison Co,* 63 Mich App 559, 565; 234 NW2d 702 (1975), *lv den* 395 Mich 800 (1975); see *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965). It is a mainstay of products liability actions and applies to products which have left the manufacturer's control. *Manzoni v Detroit Coca-Cola Bottling Co,* 363 Mich 235, 241-242; 109 NW2d 918 (1961). The Uniform Commercial Code has also codified this warranty to cover goods as defined by the code. *Cova v Harley Davidson Motor Co,* 26 Mich App 602, 610; 182 NW2d 800 (1970); MCL 440.2314; MSA 19.2314. Although such a warranty is usually applied in the context of articles which have been sold or purchased,[1] it has been extended to articles which have been leased or bailed. *Jones v Keetch,* 388 Mich 164; 200 NW2d 227; 91 ALR3d 471 (1972).

Plaintiff contends that the warranty of fitness is not limited to movable products and goods and should be extended to the racquetball court. He points to the extension of this warranty to services, *Williams, supra,* as well as realty. *Weeks v Slavik Builders, Inc,* 24 Mich App 621; 180 NW2d 503 (1970), *aff'd* 384 Mich 257 (1970). The holdings in those cases, however, are narrow in application. In *Williams* the Court applied the warranty of fitness to electricity, not all services, because of its inherent dangers. *Buckeye Union Fire Ins Co v Detroit Edison Co,* 38 Mich App 325, 330; 196 NW2d 316 (1972). In *Weeks, supra,* a warranty of fitness was applied to the sale of new residential homes, but the Court expressly limited its holding to the sale of new residential homes, not to all sold or leased realty. *Weeks,* pp 627-628.

---

[1] However, the purchaser of the article need not be the one invoking the warranty; no privity is required. *Piercefield, supra,* p 98.

Plaintiff also relies on *Jones, supra,* for his argument that an implied warranty of fitness should be extended to the rental of the racquetball court. In *Jones,* a motel guest was injured when the chair in which he was seated collapsed. The guest sued the motel operators for negligence and breach of implied warranty of fitness, claiming that the chair in his room was defective. The Supreme Court applied the general rule of the common law regarding an implied warranty of fitness of a bailed chattel:

"It is the general rule that, in the absence of an agreement to the contrary, the bailor of a chattel to be used by the bailee for a particular purpose known to the bailor, impliedly warrants the reasonable suitability of the chattel for the bailee's known intended use of it. The rule of implied warranty has been adopted by statute in some jurisdictions. The implied warranty is said to be raised by the delivery of the chattel to the bailee, where the quality or fitness of the article for the use specified is not visible and the defect is not discernible by an ordinary observer. As a warranty against defects it has been said to extend to such faults and defects as would entirely prevent the contemplated use and enjoyment of the bailment, or render it dangerous, but not to those which would merely diminish its convenience and appropriateness for the use designed." *Jones, supra,* p 168, citing 8 Am Jur 2d, Bailments, § 157 *Implied warranty of fitness,* pp 889-890.

The *Jones* Court also relied on *Schnitzer v Nixon,* 439 F2d 940 (CA 4, 1971), a case with a nearly identical fact pattern, and referred to the language in *Schnitzer,* p 942, that an implied warranty of fitness is a "fair placement of the innkeeper's responsibility to a guest under his roof".

Plaintiff points out that *Jones* applied a warranty of fitness to a leased chattel, and that since

the term "chattel" includes chattels real,[2] *Jones* can be extended to cover the rental of a premise. Although the *Jones* Court did not distinguish between chattels real and chattels personal, we find that the *Jones* case does not support plaintiff's position. The facts in *Jones* involved a chattel personal, *i.e.,* the chair. The general rule (cited above) relied upon in *Jones* described the warranty of fitness in terms of the "quality or fitness of the *article*", which would further indicate a chattel personal. The ALR annotation cited and relied upon by the *Jones* Court also dealt with chattels personal. Anno: *Warranties in connection with leasing or hiring of chattels,* 68 ALR2d 850. Furthermore, although the innkeeper warranty language from *Schnitzer, supra,* cited above and quoted by *Jones* could be read to imply a warranty of fitness to leased premises, *Schnitzer* applied the warranty to a chair in a motel room, not to the general premises. *Schnitzer, supra,* pp 940-941. Thus, we are not convinced that *Jones* supports the proposition that leased chattels real or premises carry a general implied warranty of fitness. See *Ely v Blevins,* 706 F2d 479 (CA 4, 1983), which cited *Schnitzer* and *Jones* and found that no implied warranty of fitness for leased premises was imposed on innkeepers in the Fourth Circuit.

The case law in Michigan does not support plaintiff's claim of breach of implied warranty of fitness of the racquetball court. Although we recog-

---

[2] A chattel is defined as: "An article of personal property; any species of property not amounting to a freehold or fee in land [*i.e.,* a leasehold]. * * * A thing personal and movable. * * * Things which in law are deemed personal property, they are divisible into chattels real and chattels personal." Black's Law Dictionary, p 299 (rev 4th ed, 1968), (citations omitted). Personalty is defined as: "Personal property; movable property; chattels" and quasi personalty is defined as "fictitiously, as chattels-real, leases for years, etc." Black's Law Dictionary, *supra,* p 1301.

nize that a consumer's claim for a breach of an implied warranty of fitness is a remedy essentially fashioned and extended by the courts, *Cova, supra,* p 610, we decline to extend it to the facts presented.[3] Our decision does not relieve defendants of all liability for plaintiff's injury. Plaintiff may pursue his suit on a negligence theory.

Affirmed.

---

[3] We note that a few jurisdictions have extended an implied warranty of fitness to leased commercial property. See Anno: *Modern status of rules as to existence of implied warranty of habitability or fitness for use of leased premises,* 40 ALR3d 646; *Reste Realty Corp v Cooper,* 53 NJ 444; 251 A2d 268 (1969).