Francis A. JONES III, Personal Representative of the Estate of Louis Joseph Ben, Deceased, Plaintiff,

v.

UNITED METAL RECYCLERS, a North Carolina Partnership, and Norfolk and Western Railway Company, a Virginia Corporation, Defendants.

No. 1:92–CV–110.

United States District Court, W.D. Michigan, S.D.

July 8, 1993.

George T. Fishback, Dennis J. Mendis, Barry P. Waldman, Sachs, Waldman, O'Hare, Hodges, et al., Detroit, MI, for plaintiff.

Robert E. Attmore, Charles H. Worsfold, Cholette, Perkins & Buchanan, Grand Rapids, MI, for United Metal Recyclers.

Phillip B. Maxwell, Burke T. Lewis, Hackett & Maxwell, Pontiac, MI, for Norfolk Southern Corp.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

This is a wrongful death products liability action arising from an accident in which plaintiff's decedent, Louis Joseph Ben, sustained fatal injuries when wet heavy scrap aluminum caused a steam explosion. Defendant United Metal Recyclers ("United Metal") produced and sold the heavy scrap aluminum, and defendant Norfolk and Western Railway Company ("N & W") transported it. Pending before the Court are United Metal's and N & W's motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, N & W's motion for summary judgment is granted, and United Metal's motion for summary judgment is granted in part and denied in part.

### I.

Plaintiff's decedent, Louis Joseph Ben, worked as a furnace operator's assistant at Alreco Metals, Inc. ("Alreco") in Benton Harbor, Michigan. On April 8, 1989, Ben used a front-end loader to place bulk scrap aluminum into a furnace. Alreco purchased the subject metal from United Metal, and N & W transported the metal from United Metal to Alreco. The scrap metal was wet, and it caused a steam explosion when Ben loaded it into the furnace. Ben was fatally injured in the accident and he died on May 5, 1989.

Plaintiff alleges that Alreco ordered the scrap metal from United Metal to be deliv-

ered dry and furnace ready, free of iron and other foreign contamination. Plaintiff further alleges that although the top layers of the scrap metal appeared dry, the lower levels were very wet and muddy. Plaintiff therefore concludes that United Metal was negligent and that it breached express and implied warranties in supplying wet material.

Plaintiff alleges that N & W knew the scrap metal was to be delivered dry and furnace ready and that N & W was negligent and breached express and implied warranties in delivering wet scrap metal to Alreco. In response to plaintiff's action, both defendants request that this Court grant them summary judgment.

## II.

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this has been done, the nonmoving party must come forward with specific facts showing that there is a material issue of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id*.

## III.

N & W requests summary judgment on plaintiff's claims of negligence and breach of implied and express warranty. First, N & W asserts that it owed no duty to plaintiff's decedent because no evidence exists that it knew, or should have known, that the scrap metal was to be kept dry in transit. N & W sets forth the following facts in support of its argument. First, N & W contends that neither United Metal nor Alreco ever notified it that the material it was transporting was to be kept dry in transit. Ralph Duncan, Alreco's buyer, admitted that he never advised the railroad that the scrap metal from United Metal had to be kept dry during shipment. Ralph Duncan deposition at 45, Brief in Support of Defendant Norfolk & Western's Motion for Summary Judgment ("N & W's Brief"), Exhibit D ("Duncan deposition"). Similarly, United Metal employee Frank Brenner testified that he does not recall anyone at United Metal informing N & W of the requirement. Frank Brenner deposition at 42, N & W's Brief, Exhibit E ("Brenner deposition"). Roger Ruminski, General Manager of United Metal, also testified that he does not know of any instructions that were given to N & W concerning the handling of the scrap metal, other than the shipping instructions on the bill of lading. Roger Ruminski deposition at 42–43, N & W's Brief, Exhibit F ("Ruminski deposition").

N & W asserts that it dropped off a railcar on a spur track which United Metal owned. United Metal personnel then loaded and sealed the car. Brenner deposition at 42–43; Ruminski deposition at 43. United Metal prepared the bill of lading and gave the bill of lading to its mobile agent for shipment to Alreco. Ruminski deposition at 43.

The bill of lading for the subject scrap metal indicates no special handling instructions. N & W's Brief, Exhibit G. In fact, the Special Instructions section of the bill of lading merely instructs N & W to send the freight charges to United Metal. *Id*. The bill of lading states only that the cargo was a

sealed railcar of scrap aluminum for recycling. *Id.* Accordingly, N & W argues that no evidence exists which indicates that it knew, or should have known, of any special requirements for the shipment. Finally, N & W contends it is undisputed that N & W delivered the shipment according to the terms of the bill of lading and that Alreco accepted the shipment.

N & W further argues that plaintiff's claim that N & W had a duty to inspect the shipment for wetness is equally without merit. In support, N & W points to Duncan's deposition testimony. Duncan, Alreco's buyer, testified that Alreco used trained laboratory personnel around the clock and that the personnel tested and inspected every incoming shipment. Duncan deposition at 38–39. Duncan further testified that Alreco did not rely in any way on N & W personnel to inspect the goods delivered. *Id.* at 39. Finally, United Metal sealed the railcars, and Alreco broke the seals upon receipt. *Id.* at 39–40. Accordingly, the railcars were sealed from the time N & W received them from United Metal to the time it delivered them to Alreco.

N & W argues that not only did it not owe a duty of care under the above facts, but that plaintiff's express and implied warranty claims are meritless as well. First, N & W emphasizes that plaintiff's first amended complaint alleges that N & W provided an express warranty under the contracts attached to plaintiff's complaint. First Amended Complaint ¶ 13. The only contracts attached to plaintiff's first amended complaint are a purchase order and the bill of lading. N & W emphasizes that the bill of lading does not mention any express warranties by the railroad as to the condition of the cargo. N & W's Brief, Exhibit G. N & W contends that N & W did not sign or adopt the purchase order, which Alreco issued, and that no evidence exists that N & W even knew of its existence.

Finally, N & W argues that plaintiff's claims based upon implied warranties under Michigan's Uniform Commercial Code must fail because N & W was neither the seller nor a merchant with respect to the scrap aluminum. Mich.Comp.Laws Ann. §§ 440.-2103, 440.2314, 440.2315 (West 1967).

In response to N & W's arguments, plaintiff maintains that a genuine issue of material fact exists regarding whether N & W knew or should have known that the scrap aluminum in the railcar was to be shipped dry and furnace ready. Plaintiff relies on the bill of lading and the purchase order to support his argument. N & W's Brief, Exhibit G; Plaintiff's Response to Defendant, Norfolk & Western Railway Company's Motion for Summary Judgment, Exhibit A. First, even if this Court accepts that Exhibit A is the purchase order connected to the subject scrap metal, plaintiff has provided no evidence that N & W was a party to the document or that N & W's employees, agents, or representatives ever saw the purchase order. Second, plaintiff has provided no evidence to refute N & W's argument and evidence that the bill of lading contained no information indicating that the material was to be shipped "dry and furnace ready." Therefore, plaintiff has not met his burden of coming forth with specific facts showing that a material issue of fact exists whether N & W knew or should have known that the metal was to be shipped dry and furnace ready. Even assuming that N & W owed plaintiff's decedent a duty of care, plaintiff has come forward with no evidence that N & W breached its duty. Plaintiff has not addressed the remaining issues and arguments N & W advanced. Therefore, the Court finds that no genuine issue of material fact exists as to plaintiff's claims against N & W. Accordingly, the Court will grant N & W's motion for summary judgment.

Finally, plaintiff requests that this Court prohibit United Metal from asserting that N & W was responsible for allowing the metal to become wet if the Court grants N & W's motion for summary judgment. However, plaintiff has set forth no support, factual or legal, for his request. Plaintiff has not come forward with any evidence that the shipment became wet in transit or that N & W was responsible for allowing the metal to become wet. Therefore, plaintiff has not demonstrated that United Metal will be able to produce any evidence at trial that N & W's

action or inaction caused the metal to become wet. For the reasons set forth above, the Court declines to limit United Metal's defenses to plaintiff's claims. Accordingly, plaintiff's request is denied.

## IV.

Defendant United Metal interprets plaintiff's complaint as, in part, stating claims of breach of implied and express warranties under Article 2 of Michigan's Uniform Commercial Code, Mich.Comp.Laws Ann. §§ 440.2101–440.2725 (West 1964) ("U.C.C."). United Metal requests that the Court grant it summary judgment on plaintiff's U.C.C. claims, arguing that under the facts of this case plaintiff may not assert claims under the U.C.C.

Both plaintiff and United Metal correctly recognize that Michigan has abolished the requirement of privity in personal injury tort actions when the plaintiff proceeds under a breach of warranty theory. The Sixth Circuit recently noted:

> Privity is no longer required in Michigan tort law for a plaintiff who has suffered personal injury to recover on a breach of warranty theory. *See* M.C.L.A. § 440.-2318, which extends a seller's warranty to any natural person in the family or household of a buyer of a defective product; *Schultz v. Tecumseh Products,* 310 F.2d 426, 429 (6th Cir.1962).

*Downriver Internists v. Harris Corp.,* 929 F.2d 1147, 1149 (6th Cir.1991).

█ The Michigan Supreme Court abolished the privity requirement for tort actions in *Piercefield v. Remington Arms Co.,* 375 Mich. 85, 133 N.W.2d 129 (1965). In *Piercefield,* the plaintiff, a bystander, sustained injuries when the barrel of a shotgun exploded. The plaintiff brought a personal injury action against the gun's manufacturer, wholesaler, and retailer. *Piercefield,* 133 N.W.2d at 130. The Michigan Supreme Court rejected the defendants' argument that privity was required to maintain the action. Instead, the court held that the plaintiff could maintain a tort action against the defendants based upon breach of a legally-implied warranty, even though the parties were never in privity of contract. The court held that privity was

not required because the implied warranty was not based upon contract, but instead was legally implied. *Piercefield,* 133 N.W.2d at 133–35.

The second part of the *Piercefield* decision sheds further light on the court's holding regarding the theory of breach of a legally-implied warranty. In the second part of its opinion, the court held that in an action for breach of a legally-implied warranty, the plaintiff need not comply with the notice provisions of the Uniform Sales Act, the U.C.C.'s predecessor. The court noted that the implied "warranties are not imposed by the sales act, but are the product of common-law decisions that have recognized them in a variety of situations." *Piercefield,* 133 N.W.2d at 136 (quoting *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal. Rptr. 697, 699, 377 P.2d 897, 899 (1963)). Therefore, the *Piercefield* court held that no privity is required in a tort action for breach of warranties implied by law, and that the legally-implied warranties are distinct from warranties implied under a contract. *Id.*

Since *Piercefield,* Michigan courts have continued to distinguish between contract and tort theories in products liability actions. *Parish v. B.F. Goodrich Co.,* 395 Mich. 271, 235 N.W.2d 570 (1975); *Neibarger v. Universal Cooperatives,* 439 Mich. 512, 486 N.W.2d 612 (1992); *Detroit Board of Education v. Celotex Corp.,* 196 Mich.App. 694, 493 N.W.2d 513 (1992); *Williams v. Detroit Edison Co.,* 63 Mich.App. 559, 234 N.W.2d 702, 706 (1975) ("Plaintiff's suit is grounded in tort, rather than in contract, and the warranty is implied in fact or in law rather than pursuant to a contract."); *Citizens Ins. Co. of America v. Proctor & Schwartz,* 802 F.Supp. 133, 138 (W.D.Mich.1992) ("The 'implied warranty' in tort arises by operation of law, not as a function of the language of or other circumstances surrounding the agreement of the parties.").

In *Parish,* the Michigan Supreme Court noted:

> While some of the concepts (*e.g.,* implied warranty) developed by the courts in creating the consumer's right of direct action against the manufacturer have been enact-

ed into statute, the UCC draftsmen have acknowledged that the consumer's remedy is not statutory, but essentially a judicial development which the courts should be free to develop further. The UCC did not create a new and separate consumer's product liability claim against the manufacturer.

*Parish*, 235 N.W.2d at 573 (footnote omitted). Recently, the Michigan Supreme Court held that when a plaintiff seeks recovery for economic loss caused by a defective product purchased for commercial purposes, the plaintiff's exclusive remedy is the U.C.C. *Neibarger*, 486 N.W.2d at 618. The *Neibarger* court found:

The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Neibarger*, 486 N.W.2d at 615 (footnotes omitted). In so holding, the *Neibarger* court noted that *Parish* distinguished between tort and contract actions, and concluded:

As developed by the courts, then, the individual consumer's tort remedy for products liability is not premised upon an agreement between the parties, but derives either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the consumer. Such a policy serves to encourage the design and production of safe products.

*Neibarger*, 486 N.W.2d at 616.

Following *Neibarger*, the Michigan Court of Appeals held that the plaintiffs' claims against the defendant manufacturers, distributors, and installers of asbestos-containing products were actions based in tort, not in contract or under the U.C.C.:

In the present case, plaintiffs do not allege that defendants' products were inferior in quality or did not work for their intended purpose. They do not claim any injury to the products themselves. Rather, they claim that defendant's products are safety hazards that have created a potential health threat and caused them to suffer damages in abating the hazard. We also observe that it is highly unlikely that the parties could have anticipated and bargained over the hazards of asbestos at the time the products were sold, which was apparently years before the risks of the material were known. In short, the risk involved here is not the type that is allocated to a party through negotiation. We conclude, on the facts of this case, that plaintiffs' proper remedy lies in tort, not in contract or the UCC.

*Celotex*, 493 N.W.2d at 518–19 (footnote omitted). Although the *Celotex* court correctly noted that asbestos cases are unique in the law, the court's distinction between tort and contract actions is instructive. *Celotex*, 493 N.W.2d at 518.

◼ Thus, the Michigan courts have held that the U.C.C. is inapplicable in tort actions alleging breach of a legally-implied warranty. *Gagnon v. Dresser Industries Corp.*, 130 Mich.App. 452, 344 N.W.2d 582, 584 (1983); *Williams*, 234 N.W.2d at 706 ("The Uniform Commercial Code . . . is inapplicable to a tort action alleging a breach of implied warranty."); *Upjohn Co. v. Rachelle Laboratories, Inc.*, 661 F.2d 1105, 1108 (6th Cir.1981) ("The Uniform Commercial Code and other contract-based concepts of Michigan law are inapplicable to a tort action alleging a breach of implied warranty.").

The facts of *Johnson v. Chrysler Corp.*, 74 Mich.App. 532, 254 N.W.2d 569 (1977), are similar to those of the case before the Court. In *Johnson*, the plaintiff was injured while she was operating a power punch press owned by her employer. One defendant had sold the press to her employer, and the press was equipped with dies owned by another defendant. *Johnson*, 254 N.W.2d at 570–71.

The Michigan Court of Appeals held that "[i]n granting defendant [seller] Goldman's motion for a directed verdict, the trial judge erroneously applied the Uniform Sales Act rather than the appropriate common-law theory of implied warranty." *Johnson*, 254 N.W.2d at 571.

As the Sixth Circuit noted in *Downriver Internists, supra* 929 F.2d at 1149, the U.C.C. extends the seller's express and implied warranties to any natural person who is a member of the buyer's family or household, or who is a guest in the buyer's home, "if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Mich.Comp.Laws Ann. § 440.-2318 (West 1964). This section does not limit the common-law development of theories under which subsequent purchasers in the distributive chain may recover under U.C.C. warranties, and it does not disturb existing common law product liability remedies. Mich.Comp.Laws Ann. § 440.2318, official comment, ¶ 3; Mich.Comp.Laws Ann. § 440.-2313, official comment, ¶ 2. As set forth above, Michigan courts have abolished the requirement of privity in tort actions alleging personal injury. Michigan courts have created a tort action based upon breach of legally-implied warranties, which is separate and distinct from actions based upon contract or bought under the U.C.C.

Before discussing the facts of the case before the Court, the Court notes that several cases hold, or appear to hold, that the U.C.C. is applicable in tort actions alleging breach of warranty. The Court of Appeals' discussion in *Clancy v. Oak Park Village Athletic Center*, 140 Mich.App. 304, 364 N.W.2d 312, 313–14 (1985), seems to suggest that the implied warranty of fitness under the U.C.C. applies in tort personal injury actions regardless of privity. However, the *Clancy* court relied upon *Piercefield* in making its statement of the law. As discussed above, the Michigan Supreme Court in *Piercefield* held that no privity of contract is required in tort actions based upon breach of a legally-implied warranty and held that the

implied warranties are not based upon contract. The *Piercefield* court clearly distinguished between this judicially-created tort action and actions based upon the former Uniform Sales Act, the U.C.C.'s predecessor. *Piercefield*, 133 N.W.2d at 136. Therefore, the Court finds that the language in *Clancy* suggesting that the U.C.C. applies in tort personal injury actions regardless of privity does not reflect Michigan law as stated by the Michigan Supreme Court, and it is clearly contrary to opinions previously issued by the Michigan Court of Appeals. *Gagnon*, 344 N.W.2d at 584; *Williams*, 234 N.W.2d at 706; *see also UpJohn*, 661 F.2d at 1108.

Similarly, in *Reid v. Volkswagen of America, Inc.*, 512 F.2d 1294 (6th Cir.1975), *appeal after remand*, 575 F.2d 1175 (5th Cir.1978), the Sixth Circuit interpreted then existing Michigan law to determine the statute of limitations in products liability personal injury actions. The Michigan Supreme Court had not yet addressed the issue. In its analysis, the *Reid* court found that "Michigan's rejection of the privity requirement in products liability cases is, as we see it, both sweeping and complete," and that "Michigan's rejection of privity is not limited to tort actions as opposed to actions based on warranty whether express or implied." *Reid*, 512 F.2d at 1298. However, *Reid* was decided before the Michigan Supreme Court issued its opinion regarding the statute of limitations issue in *Parish, supra*. As discussed above, in *Parish* the Michigan Supreme Court determined that the U.C.C. did not create an independent cause of action in personal injury cases. Moreover, the *Reid* court relied upon *Piercefield*, but it failed to recognize that the Michigan Supreme Court in *Piercefield* distinguished between personal injury tort actions based upon warranties implied in law, and actions in contract and under the Uniform Sales Act. After the Michigan Supreme Court issued the *Parish* decision, the Sixth Circuit modified its decision to follow *Parish*. *Reid v. Volkswagen of America, Inc.*, 575 F.2d 1175 (6th Cir.1978). Accordingly, *Reid* is not controlling.[1]

---

1. For the same reasons, the Court declines to follow *Sylla v. Massey–Ferguson, Inc.*, 660 F.Supp. 1044 (E.D.Mich.1984), and *Mt. Holly Ski Area v. U.S. Elec. Motors*, 666 F.Supp. 115

Finally, in *Bevard v. Ajax Mfg. Co.*, 473 F.Supp. 35 (E.D.Mich.1979), the court held that under Michigan law, a person who is injured by a defective product may proceed under the U.C.C., common law warranty remedies, and negligence. *Bevard* was an action by an employee who was injured by a press against several defendants, including an intermediate seller. The *Bevard* court analyzed the plaintiff's potential U.C.C. claims against that defendant. However, *Bevard* failed to follow Michigan law, including *Johnson* and *Williams, supra*, which held that U.C.C. remedies are inapplicable in such an action.

■ Therefore, the Court finds that Michigan courts have abolished the requirement of privity in tort personal injury actions based upon warranties implied at law. The Court further finds that tort actions based upon legally-implied warranties are distinct from actions based upon warranties arising from contracts. The Court further finds that under Michigan law U.C.C. warranties are inapplicable in tort actions based upon common law implied warranties. Plaintiff in this action has brought a complaint which could be construed to allege breach of express and implied warranty claims under the U.C.C. Plaintiff alleges that his decedent was fatally injured while loading scrap metal purchased by his employer, Alreco, and manufactured and sold by defendant United Metal. Plaintiff's decedent is not the buyer, he is not a party to the contract under which Alreco purchased the subject scrap metal, and he is not a member of the buyer's household or family, or a guest in the buyer's home.

Mich.Comp.Laws Ann. § 440.2318 (West 1964). The U.C.C. is inapplicable to this tort action. Instead, plaintiff's action is a tort action based upon the theories of breach of common law legally-implied warranty and negligence. Accordingly, the Court grants defendant United Metal's motion for summary judgment regarding plaintiff's claims under the U.C.C.

### V.

United Metal next requests that the Court enter summary judgment in its favor on plaintiff's negligence claims. In his briefs in response to United Metal's motion, plaintiff argues that he has asserted viable negligence claims of failure to warn, negligent inspection, and negligent design. United Metal argues that it owed no duty to warn and that plaintiff cannot prove causation. United Metal further argues that the utility of its conduct outweighs the risk of harm and that, accordingly, the Court should grant summary judgment in its favor on the issue of negligence.

■ Whether the defendant owes the plaintiff a duty to warn is a question for the court. *Tasca v. GTE Products Corp.*, 175 Mich.App. 617, 438 N.W.2d 625, 627 (1988) (citing *Antcliff v. State Employees Credit Union*, 414 Mich. 624, 640, 327 N.W.2d 814 (1982), *reh'g denied*, 417 Mich. 1103 (1983), and *Pettis v. Nalco Chemical Co.*, 150 Mich. App. 294, 302, 388 N.W.2d 343 (1986)). A manufacturer has the duty to warn purchasers or users of its product about dangers associated with intended uses and foreseeable misuses. *Antcliff*, 327 N.W.2d at 820;

(E.D.Mich.1987). In both cases, the federal district court analyzed the economic loss doctrine. However, the Michigan Supreme Court had not yet issued its opinion in *Neibarger, supra*, when these opinions were issued. In *Sylla*, the court interpreted Michigan law, and concluded that "when a plaintiff attempts to impose liability on a manufacturer for personal injury or property damage, he may proceed under products liability theories or commercial contract theories regardless of privity." *Sylla*, 660 F.Supp. at 1046. The *Sylla* court failed to discuss the Michigan law discussed above, and it did not recognize that *Piercefield* distinguished between actions in contract and actions in tort based upon legally-implied warranties. Similarly, in *Mt. Holly*, the court relied upon *Piercefield*, concluded that

Michigan had abolished privity in personal injury actions, and found that an action for personal injury could be brought under the U.C.C. regardless of privity. *Mt. Holly*, 666 F.Supp. at 118. The court further noted that the *Piercefield* court had not mentioned the U.C.C., and "[t]his omission is further evidence of the *Piercefield* court's intention to abolish the privity requirement in personal injury actions." *Mt. Holly*, 666 F.Supp. at 118 n. 1. However, in *Piercefield* the Michigan Supreme Court discussed the Uniform Sales Act. As noted above, the *Piercefield* court concluded that the provisions of the Uniform Sales Act did not apply in tort actions based upon warranties implied by law. *Piercefield*, 133 N.W.2d at 136.

*Pettis*, 388 N.W.2d at 347–48. A manufacturer does not have the duty to warn of obvious dangers. *Tasca*, 438 N.W.2d at 628; *Pettis*, 388 N.W.2d at 348.

■ United Metal argues that it did not owe plaintiff's decedent a duty to warn, contending that it reasonably relied upon plaintiff's decedent's employer, Alreco, to warn him of the potential danger. In making this argument, United Metal cites *Tasca, supra.* In *Tasca*, the court held that the manufacturer or supplier of a product has the duty to warn when the following three factors are satisfied:

> (1) the product is defective or dangerous, (2) the supplier has no reason to believe the user will realize its defective or dangerous condition, and (3) the supplier cannot reasonably rely on the purchaser/employer to warn the ultimate users of the product of the dangers.

*Tasca*, 438 N.W.2d at 628. United Metal bases its argument upon the third factor and it does not directly address the first two factors. United Metal argues that it reasonably relied upon Alreco to warn plaintiff's decedent of the dangers associated with wet scrap metal. United Metal provides as support for its argument evidence that Alreco was an experienced, sophisticated user of scrap metal and that Alreco knew it may receive wet scrap metal.

The Court must determine the third factor by balancing the following considerations:

> [T]he reliability of the employer as a conduit of necessary information about the product; the magnitude of risk involved; and the burdens imposed on the supplier by requiring it to directly warn the ultimate users.

*Tasca*, 438 N.W.2d at 628. Balancing the considerations established in *Tasca*, the Court first finds that the magnitude of risk of harm from wet scrap metal is great. Second, the burden on United Metal to directly warn the ultimate users is small. In *Tasca*,

the cobalt was originally packaged in canisters, but when it reached the plaintiff it had been formed into a rough product. Not only was it unlikely that the plaintiff ever saw the canisters, once the cobalt was mixed the canisters and labels were destroyed. *Tasca*, 438 N.W.2d at 629. Additionally the court found that the employer would not have allowed the defendant to orally warn the employees or to distribute literature about the product's dangers. The court found that the employer was a sophisticated user of the product and that it was in the best position to warn of the product's dangers. *Id.* In contrast, United Metal has not shown that it would be greatly burdened by placing warnings on its scrap metal bins and it has not shown that plaintiff's decedent would not have seen warning labels on the material. United Metal has not met its burden of demonstrating that Alreco was in the best position to warn of the danger.

Finally, United Metal has not shown that Alreco was a reliable conduit of information about the wet scrap metal. In *Tasca*, the employer undertook extensive studies and research about the product's dangers, instituted safety and health monitoring programs, posted and disseminated safety material, and maintained an extensive library of materials about the product's dangers. *Tasca*, 438 N.W.2d at 628–29. In contrast, United Metal merely provides some evidence that Alreco was experienced in the handling and processing of scrap metal, that it knew that scrap metal should be inspected for wetness, and that the subject bin had been marked as wet. United Metal has not demonstrated that Alreco was a reliable conduit of information. Weighing the three considerations, the Court cannot find as a matter of law that United Metal acted reasonably in relying on Alreco to provide warnings to plaintiff's decedent. Because the third factor of the test established in *Tasca* is not met, the Court need not discuss the first two factors.[2] Accordingly, the Court denies United Metal's motion

---

**2.** United Metal also relies upon *Antcliff*, in which the Michigan Supreme Court found that the plaintiff and his coworker were knowledgeable and experienced in the product's use, and therefore held that the defendant had no duty to provide instructions for the product's use. *Antcliff*, 327 N.W.2d at 821. United Metal has presented no evidence that plaintiff's decedent was a knowledgeable and experienced user of scrap metal. Instead, it relies solely upon the argument that his employer, Alreco, was a sophisticated user. Therefore, *Antcliff* is not applicable.

for summary judgment based upon the duty to warn.

■ In response to United Metal's motion for summary judgment, plaintiff asserts that United Metal negligently failed to inspect the scrap metal for wetness and that United Metal negligently designed the product. A manufacturer has the duty to inspect its product as is reasonably necessary to make the product safe for users. *Taylor v. Wyeth Laboratories, Inc.*, 139 Mich.App. 389, 362 N.W.2d 293, 296–97 (1984); *see also Stachurski v. K Mart Corp.*, 180 Mich.App. 564, 447 N.W.2d 830, 832 (1989) ("A manufacturer or seller owes a duty to warn or inspect a product if he has reason to know or can readily ascertain that it is defective."). Although United Metal contends that the duty to inspect is irrelevant to this action, the Court finds that plaintiff has presented ample evidence to demonstrate that the issue of inspection is relevant. The Court finds that United Metal has not demonstrated that under the facts of this action it owed plaintiff's decedent no duty to inspect the material for wetness.

■ Under Michigan law, a manufacturer has the duty to use reasonable care in designing its product so that the product is safe for its intended or reasonably anticipated use, guarding against unreasonable and foreseeable risks. "Reasonably anticipated use" includes reasonably anticipated misuse. *Toth v. Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir.1984); *Gootee v. Colt Ind., Inc.*, 712 F.2d 1057, 1064 (6th Cir.1983). The Court finds that placing scrap metal into a furnace is a reasonably anticipated use of the product. United Metal has not addressed the issue of whether it designed the product, and it has not addressed whether it owed a duty to non-negligently design the product. For the reasons set forth above, the Court denies United Metal's motion for summary judgment based on the question of duty.

■ United Metal further argues that a breakdown in Alreco's safety procedures was a superseding cause of the injury, and that

therefore plaintiff cannot prove the requisite element of proximate cause. Whether an act is a superseding cause depends upon whether it is foreseeable:

> [W]here a plaintiff is injured by a manufacturer's product, the intervening conduct of the plaintiff's employer does not insulate the manufacturer from liability unless the employer's acts or omissions are unforeseeable. Antecedent tortfeasors are not relieved of liability as the result of consequences which they should have anticipated under the circumstances.

*Toth,* 749 F.2d at 1197 (citation omitted). The Michigan Court of Appeals has held:

> [W]here there is evidence presented of the manufacturer's knowledge of unsafe use, or that unsafe use is foreseeable, liability is not precluded.

*Shipman v. Fontaine Truck Equipment Co.*, 184 Mich.App. 706, 459 N.W.2d 30, 33 (1990). United Metal has provided evidence that at some point the subject bin was marked as wet, but that the marking was removed or knocked off the bin.[3] The Court cannot find that this sequence of events is unforeseeable as a matter of law. Therefore, the Court rejects United Metal's argument that as a matter of law the breakdown in safety routine was a superseding cause of the injury. The Court finds that a genuine issue of material fact exists on the issue of proximate cause.

■ United Metal urges the Court to find that the utility of its conduct outweighs the risk of harm and to grant summary judgment in its favor on the issue of negligence. United Metal relies upon the Michigan Supreme Court's decision in *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977). In *Moning,* the Michigan Supreme Court held that a court must weigh the utility of the defendant's conduct against the magnitude of the risk to determine whether the question of negligence should be presented to the jury:

> The balancing of the magnitude of the risk and the utility of the actor's conduct re-

---

**3.** United Metal also asserts that plaintiff's decedent did not check the bin for wetness before placing the material in the furnace. However, United Metal has presented no evidence in support of this assertion.

quires a consideration by the *court and jury* of the societal interests involved. The issue of negligence may be removed from jury consideration if the court concludes that overriding consideration of public policy require that a particular view be adopted and applied in all cases.

*Moning*, 254 N.W.2d at 770 (footnote omitted; emphasis in original). United Metal argues that the social utility of inexpensive and widespread metal recycling, accomplished by placing the burden of drying scrap metal upon buyers and not manufacturers, outweighs the risk of steam explosion caused by wet scrap metal. Balancing the magnitude of risk against the utility of defendant's conduct, the Court finds that there is insufficient basis to conclude, as a matter of law, that the utility outweighs the risk. The Court finds that reasonable persons could differ in opinion on this issue and that therefore the jury must be permitted to consider the question of negligence. *Moning*, 254 N.W.2d at 774.

## VI.

■ United Metal finally requests that the Court grant it summary judgment on plaintiff's claims of breach of warranty implied in law. To prevail on his claim of breach of implied warranty, plaintiff must prove:

(1) A defect attributable to the manufacturer; and

(2) a causal connection between the defect and the injury or damage alleged.

*Piercefield*, 133 N.W.2d at 135; *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176, 181 (1984); *McClure v. H.K. Porter Co., Inc.*, 174 Mich.App. 499, 436 N.W.2d 677, 679 (1988).

■ Plaintiff argues that the wetness of the scrap metal was a defect. The Court finds that plaintiff has provided sufficient evidence to demonstrate a genuine issue of material fact regarding whether the scrap metal was defective. The Court further finds that plaintiff has demonstrated a genuine issue of material fact regarding whether there was a causal connection between the condition of the scrap metal and plaintiff's decedent's injuries. For the reasons set forth above, the Court cannot find as a matter of law that the asserted breakdown in safety procedures was a superseding cause of the injuries. The Court therefore denies United Metal's motion for summary judgment based upon plaintiff's claim of breach of implied warranty.

## VII.

For the reasons stated above, the Court finds that no genuine issues of material fact exist regarding plaintiff's claims against defendant N & W. Accordingly, the Court grants N & W's motion for summary judgment. The Court further finds that the U.C.C. is inapplicable to this action. Accordingly, the Court grants defendant's motion for summary judgment with respect to plaintiff's claims under the U.C.C.

The Court further finds that United Metal has not demonstrated that it did not owe plaintiff's decedent a duty of care. The Court cannot find as a matter of law that the asserted breakdown in safety routine was a superseding cause of the injury, and finds that a genuine issue of material fact exists on the issue of proximate cause. The Court further finds that there is insufficient basis to conclude as a matter of law that the utility of United Metal's conduct outweighs the risk of harm. The Court finds that reasonable persons could differ in opinion on this issue and that therefore the jury must be permitted to consider the question of negligence. Accordingly, the Court denies the remainder of United Metal's motion for summary judgment.