JODWAY v KENNAMETAL, INC

WALCH v KENNAMETAL, INC

PARISH v KENNAMETAL, INC

McGRAW v KENNAMETAL, INC

KOLOGEK v KENNAMETAL, INC

BOOTS v KENNAMETAL, INC

TEAR v KENNAMETAL, INC

LAMPELA v KENNAMETAL, INC

BOLTON v KENNAMETAL, INC

BATTISTI v KENNAMETAL, INC

Docket Nos. 151005, 151006, 151007, 151008, 151009, 151010, 151011, 151012, 151013, 151014. Submitted May 4, 1994, at Grand Rapids. Decided October 20, 1994; approved for publication December 2, 1994, at 9:00 A.M.

William J. and Susan Jodway, Lee E. and Patricia Walch, Linda M. and Kenneth Parish, Kenneth F. and Angela McGraw, Lottie and Raymond Kologek, Delphine R. Boots, Betty Tear, Robert D. and Yvonne Lampela, Michael and Darlene Bolton, and Gino G. and Helen Battisti brought separate actions in the Oakland Circuit Court against Kennametal, Inc., Metallurgie Hoboken-Overpelt, S.A., and others. The plaintiffs, employees of GTE Valeron Corporation and their spouses, sought damages for respiratory illnesses allegedly caused by the exposure of the employees to cobalt dust during the course of their employment. The plaintiffs claimed that the defendants, suppliers of the cobalt to GTE Valeron, were liable under the theories of failure to warn, implied warranty of merchantability, alternative liability, market share liability, enterprise liability, and concert of action. The court, Robert C. Anderson, J., granted summary disposition for Metallurgie Hoboken-Overpelt, S.A., a Belgian corporation, with respect to the claims of the Lampelas, Tear, and the Boltons on the basis that the court lacked personal jurisdiction over Metallurgie, but held that a question of fact existed whether Afrimet-Indussa, Inc., which had sold cobalt to GTE Valeron, was acting as an agent for Metallurgie.

Thereafter, the court, following a series of motions and orders, ultimately granted summary disposition for all the remaining defendants of all the claims of all the plaintiffs. The plaintiffs in each action appealed the order dismissing all the claims of all the plaintiffs; the Lampelas, Tear, and the Boltons also appealed the order dismissing Metallurgie Hoboken-Overpelt; and Metallurgie cross appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. Because the defendants supplied the cobalt in bulk to GTE Valeron, which was clearly a sophisticated user that knew the dangers inherent in using cobalt, the defendants had no duty to warn the plaintiff employees directly of those dangers, but, rather, it had the right to expect that GTE Valeron would make its employees aware of the dangers involved as required by both state and federal law. Accordingly, the trial court did not err in granting summary disposition with respect to the plaintiffs' claim based on a failure to warn.

2. The same rationale that bars an employee of a sophisticated user from recovering from the bulk supplier of a dangerous product on the basis of the theory of failure to warn is applicable to a claim on the theory of breach of an implied warranty of merchantability. Therefore, the trial court did not err in granting summary disposition for the defendants with respect to the plaintiffs' claim based on breach of an implied warranty of merchantability.

3. The claim of concert of action was premised on the allegation that the defendants, acting in concert, negligently and in breach of an implied warranty of merchantability withheld warnings of the dangers of cobalt from the plaintiff employees. However, because the defendants had no duty to warn the plaintiff employees directly, the underlying premise of the claim of concert of action fails, and the trial court properly granted summary disposition for the defendants with regard to this claim.

4. Whether there exists a question of fact concerning any agency relationship between Afrimet-Indussa and Metallurgie need not be resolved to determine whether the plaintiffs showed facts sufficient to justify the trial court exercising limited personal jurisdiction over Metallurgie pursuant to MCL 600.715; MSA 27A.715. The facts pleaded by the plaintiffs are insufficient to vest the courts of this state with personal jurisdiction over Metallurgie.

Affirmed.

*Sachs, Waldman, O'Hare, Helveston, Hodges &*

*Barnes, P.C.* (by *Ronald S. Weiner*), for the plaintiffs.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Christopher L. Terry*), for Kennametal, Inc.

*Petersmarck, Callahan, Bauer & Maxwell, P.C.* (by *Richard W. West*), for GTE Products Corporation.

*Blum, Konheim, Elkin & Blum* (by *Irving R. Blum*), for Metallurgical Industries, Inc.

*Holahan, Malloy, Maybaugh & Monnich* (by *Harrison C. Stackpole*), for Shieldalloy Corporation.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Joseph Kochis* and *David M. Shafer*), for Metallurgie Hoboken-Overpelt, S.A.

Before: TAYLOR, P.J., and CONNOR and M. J. CALLAHAN,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the March 6, 1992, order of the circuit court granting summary disposition in favor of defendants. Plaintiffs Lampela, Tear, and Bolton also appeal as of right from the circuit court's order granting summary disposition for defendant Metallurgie Hoboken-Overpelt (MHO) on the basis of lack of personal jurisdiction. MHO has cross appealed from the same order. We affirm.

These consolidated cases arose from plaintiff employees[1] having incurred respiratory illnesses as

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiffs include both employees of GTE Valeron Corporation and spouses of those employees.

a result of having inhaled cobalt dust while employed at defendant GTE Valeron Corporation's Madison Heights facility. GTE Valeron, a leading manufacturer of metal cutting tools, mixed the powdered cobalt with other metals to form the tools that employees ground into a finished product.

Plaintiffs commenced the instant actions against GTE Valeron and its cobalt suppliers between 1987 and 1990. Defendant employer was dismissed from the action by orders of summary disposition on July 24, 1990, and July 3, 1991. The trial court found that plaintiffs' claims were barred by the exclusive remedy clause of the Michigan Worker's Disability Compensation Act and this Court affirmed. See *Jodway v GTE Valeron,* unpublished opinion per curiam of the Court of Appeals, decided January 12, 1994 (Docket Nos. 137226-137232). Plaintiffs continued this action in the trial court against defendant suppliers on the theories of failure to warn, implied warranty of merchantability, alternative liability, market share liability, enterprise liability, and concert of action.

On February 1, 1991, defendant Kennametal, Inc., joined by Metallurgical Industries, Inc., and GTE Products Corporation, filed a motion for summary disposition, pursuant to MCR 2.116(C)(8) and (10), focusing on the allegation that they had no duty to warn plaintiffs of the dangerous nature of cobalt. For purposes of the motion, defendants conceded that the cobalt was defective or dangerous and that defendants could not have expected plaintiffs to have discovered the defective or dangerous condition. Thus, the remaining question for the circuit court was whether defendants reasonably could have relied on employer defendant GTE Valeron to warn plaintiffs of the inherent dangers

of the cobalt. The trial court decided as a matter of law that defendant suppliers reasonably could have relied on GTE Valeron to warn its employees. Accordingly, on June 26, 1991, it granted defendants' motion for summary disposition with respect to the count alleging negligent failure to warn only. However, the corresponding order entered by the court on December 26, 1991, dismissed the entire actions of plaintiffs Jodway, Walch, Parish, McGraw, Kologek, and Boots against Kennametal, Metallurgical Industries, and GTE Products Corporation. On January 13, 1992, the trial court entered an order setting aside the December 26, 1991, order, presumably because the order mistakenly dismissed all claims rather than just the failure to warn claim.

Earlier in 1991, MHO had moved for summary disposition with respect to the claims of plaintiffs Lampela, Tear, and Bolton, pursuant to MCR 2.116(C)(1), arguing that the trial court lacked personal jurisdiction over it because it was a Belgian corporation. The trial court earlier had granted a similar motion regarding the claims of plaintiffs Kologek, McGraw, Walch, Marr, Boots, Parish, and Jodway.[2] The court granted this motion on the same basis as the earlier motion by an order entered on November 25, 1991. However, the court found that a question of fact remained regarding whether defendant Afrimet-Indussa, Inc., which had sold cobalt to GTE Valeron, was acting as MHO's agent. Nonetheless, because the court determined that MHO itself had insufficient contacts with Michigan, it granted MHO's motion for summary disposition.

On November 14, 1991, defendants moved for

[2] This Court affirmed that decision, *Kologek v Metallurgie Hoboken-Overpelt, S A,* unpublished opinion per curiam of the Court of Appeals, decided March 24, 1992 (Docket Nos. 123693-123699).

summary disposition with respect to plaintiffs' warranty, alternative liability, concert of action, enterprise liability, and market share theories. On March 6, 1992, the trial court entered an order dismissing all claims against all remaining defendants. Plaintiffs have appealed as of right from this order. In addition, plaintiffs Lampela, Tear, and Bolton have appealed as of right the trial court's November 25, 1991, order granting summary disposition to defendant MHO. MHO cross appealed, contesting the trial court's determination that a question of fact exists regarding whether Afrimet-Indussa acted as its agent.

Plaintiffs argue that the trial court erred in granting defendants' motion for summary disposition with respect to the claim based on the failure to warn. We disagree. One who supplies a dangerous product to another through a third person has a duty to warn the user of the product's dangerous qualities if: (1) the product is defective or dangerous; (2) the supplier has no reason to believe the user will realize its defective or dangerous condition; and (3) the supplier cannot reasonably rely on the purchaser/employer to warn the product's ultimate user of the danger. *Tasca v GTE Products Corp,* 175 Mich App 617, 624; 438 NW2d 625 (1988). See also *Aetna Casualty & Surety Co v Ralph Wilson Plastics Co,* 202 Mich App 540, 546-548; 509 NW2d 520 (1993); *Mascarenas v Union Carbide Corp,* 196 Mich App 240, 246-247; 492 NW2d 512 (1992); *Kudzia v Carboloy Division of General Electric Co,* 190 Mich App 285, 288; 475 NW2d 371 (1991).

In *Aetna, supra* at 546, this Court determined that commercial enterprises that use materials in bulk must be regarded as sophisticated users. The *Aetna* Court continued by indicating that because the employer had an obligation under the Michi-

gan Occupational Safety and Health Act to make information available to the employees that would have made the employees aware of possible dangers, the designation of sophisticated user was particularly appropriate. The Court reasoned:

> Those with a legal obligation to be informed concerning the hazards of materials used in manufacturing processes must be relied upon, as sophisticated users, to fulfill their legal obligations, thereby absolving manufacturers in some circumstances of the duty to warn the users of chemical products, where such use is in the course of employment for a sophisticated bulk user. Any other rule would mean that " '[m]odern life would be intolerable unless one were permitted to rely to a certain extent on others' [sic] doing what they normally do, particularly if it is their duty to do so.' 2 Restatement Torts, 2d, § 388, comment n, p 308." *Tasca v GTE Products Corp,* 175 Mich App 617, 624; 438 NW2d 625 (1988). [*Aetna, supra* at 547-548].

Accordingly, we conclude that GTE Valeron was a sophisticated user.

Defendant suppliers in this matter had at least constructive knowledge of federal law under the Occupational Safety and Health Act, and state law under MIOSHA, requiring an employer to provide a safe workplace to its employees, including compliance with specific dust control standards for cobalt dust. See Occupational Safety and Health Act of 1970, 29 USC 651 *et seq.*; MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.*; 29 CFR 1910.1000. Defendant suppliers accordingly had a reasonable basis to rely on GTE Valeron's compliance with these statutory requirements and, thus, are able to avail themselves of the sophisticated user defense. Therefore, the suppliers could reasonably rely on the purchaser/employer to warn its employees

without the suppliers having actual knowledge that such warnings were indeed being given. The trial court did not err in granting defendants' motion for summary disposition with respect to plaintiffs' claim of failure to warn.

Plaintiffs argue that the trial court erred in ruling that the sophisticated user defense applies to implied warranty and concert of action causes of action. Again, we disagree.

In order to prove the breach of an implied warranty, plaintiffs must show that the product left the manufacturer in a defective condition, and that the defect caused the plaintiffs' injuries. *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 96-97; 133 NW2d 129 (1965). In *Goodbar v Whitehead Bros,* 591 F Supp 552 (WD Va, 1984), aff'd sub nom *Beale v Hardy,* 769 F2d 213 (CA 4, 1985), the defendant supplier sold the defendant employer silica, which caused respiratory illnesses in its employees. The court held that a knowledgeable purchaser of a product who is aware of the product's dangerous propensities does not receive an implied warranty of merchantability. *Id.* at 567. In dismissing the plaintiff's implied warranty claim, the *Goodbar* court stated:

Next, I deal with the legal effect of the Foundry's extensive knowledge about the danger of exposure to silica dust upon Plaintiff's breach of implied warranty of merchantability. Virginia Code § 8.2-314. This warranty arises, if at all, at the time the product is sold to the purchaser. It runs from the seller to the purchaser and then through the purchaser to the ultimate user. With one notable exception, the user can rise no higher than purchaser through which he obtained the implied warranty. Thus, one must examine whether an implied warranty of merchantability was created when the Defendant suppliers sold the silica sand and related products to the Foundry.

As has already been demonstrated above in the discussion of the negligence claim, the Foundry has had extensive knowledge of the presence of silica in the different products purchased from Defendants and the harmful effects of respirable free silica dust for many years. The dispositive question, therefore, is whether a purchaser who has full knowledge of a defect or dangerous condition of a product receives an implied warranty of merchantability from the seller that such conditions do not exist.

When a skilled purchaser such as the Lynchburg Foundry knows or reasonably should be expected to know of the dangerous propensities or characteristics of a product, no implied warranty of merchantability arises. Since Plaintiffs claim derivatively through the Foundry on their implied warranty claim, and since the Foundry received no implied warranty as to the particular harmful propensities and characteristics of free silica because of their extensive knowledge in this area, Plaintiffs' claim on this theory must also fail. [*Id.*; citations omitted.]

Further, in *Schmidt v GTE Products Corp,* unpublished opinion of the Federal District Court for the Eastern District of Michigan, decided October 16, 1986 (Docket No. 84-CV-73715-DT), a cobalt exposure case, the court said:

Plaintiff claims Defendants breached the implied warranty of merchantability by failing to provide a warning that the cobalt and carbide dust were dangerous. MCL 444.2314 [MSA 19.2314]. This implied warranty arises at the time the Defendants sold the cobalt to Carboloy. The warranty runs from the seller to the purchaser and to any known or expected users of the goods. The user does not have any rights higher than those of the purchaser.

As stated earlier, Carboloy had and continues to have extensive knowledge of the dangers of car-

bide dust. When a sophisticated purchaser knows of the dangerous characteristics of a product, no implied warranty of merchantability arises. 3 Anderson, Uniform Commercial Code [(3d ed), § 2-314:79, p 186]. Because Plaintiff's claim is derivative of the implied warranties to Carboloy, and since Defendants need not have warned Carboloy of the dangers of the carbide dust, no implied warranty exists between Plaintiff's decedent and the Defendants.

While not bound in any sense by the *Schmidt* decision, we do adopt that court's well-stated rationale and affirm the trial court's grant of summary disposition with respect to plaintiffs' implied warranty claim.

The same rationale that bars an employee of a sophisticated user from recovering from a supplier of a dangerous product on a claim based on a failure to warn theory is also applicable to claims based on an implied warranty theory. A purchaser who has extensive knowledge of a product's inherently dangerous propensities should not be allowed to claim that an implied warranty of merchantability exists as a guaranty against such characteristics.

Plaintiffs next argue that the trial court erred in granting defendants' motion for summary disposition with respect to their concert of action claim. We disagree.

In order to prove a claim of concert of action, the plaintiff must show that "all defendants acted tortiously, pursuant to a common design . . . ." *Abel v Eli Lilly & Co,* 418 Mich 311, 338; 343 NW2d 164 (1984). Plaintiffs claim that the tortious acts committed by defendants constituted negligence and breach of an implied warranty of merchantability. The negligence asserted by plaintiffs was defendants acting in concert (as an industry)

to withhold warnings from users like plaintiffs. Several of plaintiffs' exhibits indicated a hesitancy on the part of defendant GTE Valeron to disclose fully to its employees the potential hazards associated with the inhalation of cobalt dust. Plaintiffs also have presented several cobalt industry studies, apparently to imply that there was an industry-wide effort to conceal the hazards from employees. However, these documents do not establish such an effort. In addition, because no implied warranty of merchantability passed with the cobalt to GTE Valeron, an alleged breach of such a warranty could not constitute the underlying tortious conduct necessary to a concert of action claim. Accordingly, the trial court did not err in granting defendants' motion for summary disposition with respect to this claim.[3]

Plaintiffs Lampela, Tear, and Bolton argue that the trial court erred in refusing to exercise personal jurisdiction over defendant MHO, asserting that the proofs demonstrated that defendant MHO had sufficient contacts with Michigan through its agent to satisfy statutory and constitutional requirements. We disagree.

Whether a court has personal jurisdiction over a party is a question of law, which this Court reviews de novo. See *L T Elsey & Son, Inc v American Engineering Fabrics, Inc,* 191 Mich App 146, 147-148; 477 NW2d 483 (1991). The trial court held that MHO fell within the reach of Michigan's long-arm statute, MCL 600.715; MSA 27A.715, but felt there were insufficient minimum contacts such that the maintenance of the suit would offend traditional notions of fair play and substantial justice.

---

[3] We note that plaintiffs have not claimed error in the trial court's dismissal of their alternative liability, market share liability, and enterprise liability counts.

In the related case, *Kologek v Metallurgie Hobo-ken-Overpelt, S A,* unpublished opinion per curiam of the Court of Appeals, decided March 24, 1992 (Docket Nos. 123693-123699), involving many of the same parties and the same plaintiffs' counsel, this Court affirmed an order of summary disposition for MHO that was premised on a finding that plaintiffs had failed to show facts to justify an exercise of limited personal jurisdiction over MHO pursuant to MCL 600.715; MSA 27A.715. See also *Ball v Metallurgie-Hoboken Overpelt, S A,* 902 F2d 194 (CA 2, 1990), cert den 498 US 854 (1990) (reaching the same conclusion in similar litigation governed by New York law). In the prior decision, the plaintiffs presented three purchase orders from GTE Valeron to Afrimet, the alleged agent of MHO, and its predecessor corporation. They also presented three trade journal advertisements from Afrimet. In the instant case, plaintiffs presented evidence of additional contacts with Michigan. While evidence of additional contacts makes the exercise of personal jurisdiction a closer question in this case, it is, nonetheless, insufficient to vest our courts with personal jurisdiction over defendant MHO. This is especially true considering that, as a Belgian corporation, MHO itself has had no direct contacts with Michigan.

In the earlier litigation, this Court affirmed the trial court's finding that an issue of fact existed regarding the agency of Afrimet for MHO. On appeal in both that matter and the instant case, MHO maintains that Afrimet was an independent corporation and not its agent. Because this Court has already decided that an issue of fact exists regarding the question of agency, and because it is not necessary to a resolution of this jurisdictional issue, we decline to address it further.

Affirmed.