# STATE OF MICHIGAN

# COURT OF APPEALS

BARTLETT INVESTMENTS INC,

    Plaintiff-Appellant,

v

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON,

    Defendant-Appellee.

FOR PUBLICATION
March 2, 2017
9:00 a.m.

No. 328922
Wayne Circuit Court
LC No. 14-007014-CB

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff is the owner of a vacant building in the city of Highland Park for which it purchased a commercial property insurance policy. Because vacant buildings carry a significantly greater risk for vandalism and damage than do occupied buildings, plaintiff had to obtain a policy that carried special certificates of coverage regarding vacant buildings. The certificates contained two provisions relevant to this appeal. First, the policy provided that "any loss or damage caused by Vandalism must be reported to [Lloyd's] within ten (10) days after the Insured first learns of the loss or damage." Second, it provided that, as a condition of coverage, the insured must assure that the building "be fully secured against unauthorized entry at all times" and that "the insured property shall be inspected regularly by the Insured or the Insured's agent during the policy period."

On or about February 1, 2013 plaintiff's owner, Anwar Matty discovered extensive vandalism damage to the building. He submitted a claim for the losses, and defendant rejected the claim. The reason set forth in defendant's denial letter was:

> [T]he claimed damages are a combination of overlap with the loss of January 6, 2013,[1] wear and tear, maintenance and theft. There was also an indication of long-term water damage . . . . As none of these are Covered Causes of Loss, Underwriters regrets that they are unable to provide payment for your claim.

---

[1] Defendant provided coverage for the January loss and that loss is not at issue in this case.

-1-

Following the denial, plaintiff filed suit. At the trial court, defendant relied on two grounds for denial that had not been referenced in the denial letter, failure to comply with the 10 day notice provision and failure to comply with the requirement to make "regular inspections" and to keep the building secured. Defendant brought a motion for summary disposition under MCR 2.116(C)(10), asserting that there was no question of fact that plaintiff had failed to comply with these provisions and, therefore, was not entitled to coverage. The trial court agreed and granted defendant's motion, dismissing the case. Although we disagree with portions of the trial court's analysis, we affirm.

## I. WAIVER OF DEFENSES NOT RAISED IN THE DENIAL LETTER

Plaintiff argues that the trial court's decision was erroneous because Michigan law precludes defendant from obtaining relief on any defenses not explicitly stated in its first denial letter. Plaintiff relies heavily on *Smith v Grange Mut Fire Ins Co*, 234 Mich 119, 122-123; 208 NW2d 145 (1926) where our Supreme Court stated:

> [I]t must be accepted as the settled law of this State, that, when a loss under an insurance policy has occurred and payment refused for reasons stated good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.

While *Smith* contains perhaps the clearest articulation of this rule, the doctrine appears to have been a part of Michigan jurisprudence long before *Smith*. See *Johnson v Yorkshire Ins Co*, 224 Mich 493, 496-497; 195 NW 45 (1923) (holding that when an insurer denied payment alleging that no valid contract for insurance existed it waived the defense that the insured had failed to adequately submit a proof of loss), *Popa v Northern Ins Co*, 192 Mich 237, 241; 158 NW 945 (1916) (stating that "when an insurance company has been notified of a loss under a policy issued by it, and it sends an adjusting agent to inquire into the loss, and such agent . . . refused payment, and denies all liability" that the insurer has waived the defense of failure to receive a proof of loss), and *Castner v Farmers' Mut Fire Ins Co*, 50 Mich 273, 275; 15 NW 452 (1883) (stating that when the insurance company has asserted two grounds for denying coverage at the time the suit was initiated it "was not at liberty thereafter to vary their grounds and offer new or additional objections.").

Defendant argues that in order to rely on the rule articulated in *Smith*, plaintiff is required to show that defendant's failure to specifically state these two provisions as grounds for denying coverage in its first denial letter prejudiced plaintiff. However, in our review of the case law, including more recent cases, we find no indication that an insured is required to show that it was prejudiced. See *Mich Twp Participating Plan v Fed Ins Co*, 233 Mich App 422, 436; 592 NW2d 760 (1999) (stating that "once an insurance company has denied coverage to its insured and stated its defenses, the insurer has waived or is estopped from raising new defenses."), *Smit v Kaechele*, 207 Mich App 674, 680; 525 NW2d 528 (1994) (stating the "general rule is that once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses" but that the rule cannot be applied to "broaden[] the coverage of a policy"), *Durham v Auto Club Group Ins Co*, unpublished opinion

per curiam of the Court of Appeals issued December 13, 2016 (Docket No. 329667) (finding that when an insured denied coverage, after a full investigation having "knowledge of all necessary facts to assert" a "residency defense," yet failed to assert such a defense in its first letter denying coverage that the defense was waived), p 1, 3-4.

Similarly, in *Jones v Jackson Nat'l Life Ins Co*, unpublished opinion of the United States Court of Appeals for the Sixth Circuit, issued June 20, 1994 (Docket Nos. 93-1503 and 93-1528), p 10-13; 27 F3d 566 (1994), the United States Court of Appeals for the Sixth Circuit found that upon its own review of Michigan law that there was no prejudice requirement for an insured to claim that an insurer waived any defense not explicitly mentioned in its first letter denying coverage.[2]  In that case, the insurer's first denial letter had informed its insured's spouse that it was denying payment under the insured's life insurance policy because the insured's cancer diagnoses had pre-dated delivery of the policy. *Id.* at 10-13.  The Sixth Circuit concluded that because this was the only grounds stated for denying coverage in the first denial letter that the insurer had waived any other defenses and that the insured was not required to show that it was prejudiced in order to assert that the insurer waived additional defenses. *Id.*  In reaching this conclusion, the Sixth Circuit noted a distinction in the case law between when the rule articulated in *Smith* had been applied in the context of estoppel and when it had been applied in the context of waiver. See *id.*  The Sixth Circuit noted that while an insured is required to show that it was prejudiced in order to invoke the doctrine of estoppel, it is not required to show prejudice to assert the doctrine of waiver. *Id.*[3]  The Sixth Circuit pointed to our Supreme Court's opinion in *Taylor v Supreme Lodge of Columbian League*, 135 Mich 231, 232; 97 NW 680 (1903). *Id.*  In that case, our Supreme Court held that when an insurer had expressly informed a plaintiff's attorney by letter that it was declining coverage due to the insured's alleged lack of payment that the insurer waived any other defenses. *Taylor*, 135 Mich at 232.

---

[2] While we recognize that unpublished decisions from the Federal Court of Appeals are not binding, we can turn to them as persuasive authority.  See *Jodway v Kennametal, Inc*, 207 Mich App 622, 630-631; 525 NW2d 883 (1994) (adopting the rationale of an unpublished opinion from the Federal District Court for the Eastern District of Michigan).

[3] In *Dahlmann v Geico General Ins Co*, unpublished opinion per curiam of the Court of Appeals issued March 22, 2016 (Docket Nos. 324698 and 325225), p 3, 9-10, we determined that when an insured did not show that it was prejudiced by an insurer's asserting a basis for denying benefits that was different than the grounds stated in its initial denial letter that the insured could not assert the doctrine of estoppel to preclude the insurer from obtaining relief on the alternate grounds.  However, as the opinion noted that the insured had asserted *estoppel* as the basis for relief, it did not explicitly address whether the same requirements would apply in the context of *waiver*.  See also *Potesta v United States Fidelity & Guaranty Co*, 202 W Va 308, 314-318; 504 SE2d 135 (1998) (discussing the common law application of the principles of waiver and estoppel in this context and holding that while prejudice on the part of the insured is a requirement in order to assert estoppel it is not a requirement for an insured to assert waiver).

Defendant argues in the alternative that it cannot be found to have waived any defenses not specifically stated in its initial denial letter because that letter contained the following general reservation of rights language:

> By stating the above, Minuteman Adjusters, Inc. and Underwriters do not waive any of their rights or defenses that they now have or may discover in the future. All rights, defenses and privileges afforded by the above-referenced policy or by law are expressly reserved.

We reject defendant's argument that this general language was sufficient to apprise plaintiff of its intent to rely on the 10 day notice provision as a reason for declining coverage. In *Meirthew v Last*, 376 Mich 33, 37-38; 135 NW2d 353 (1965) our Supreme Court determined that similar general reservation of rights language was not sufficient to comply with an insurer's notice obligations finding that such general language "smacks of bad faith for want of specific reference to that clause of the policy" the insurer intended to rely upon. If general reservation of rights language like that relied upon by defendant were sufficient to comply with an insurer's obligations, then insurers would be able to issue overly broad and vague denial letters without giving their insureds any indication of what provisions in the policy they ultimately intend to rely upon in denying coverage.

However, the doctrine has an exception for waivers that would "protect the insured against risks that were not included in the policy." *Kirschner v Process Design Assoc*, 459 Mich 587, 593-594; 592 NW2d 707 (1999). This exception does not apply to the 10 day notice requirement because a failure to meet this after-loss requirement did not expand by type or by extent the risks undertaken by defendant in the policy. Had plaintiff given notice within 10 days, it would not have affected the type or extent of the loss suffered. On the other hand, we conclude that requiring defendant to provide coverage for repeated vandalism to a vacant building that, contrary to the explicit requirements of the policy, was not secured or regularly inspected would substantially expand the degree of risk undertaken by the insurer. Unlike the 10 day notice requirement, these actions were to take place *before* the loss and were specifically directed at reducing the likelihood and possible extent of the type of loss actually suffered.[4]

In sum, because defendant failed to specifically reference the 10 day notice requirement in the initial denial letter, it has waived that defense. However, despite the defendant's failure to raise the defense that plaintiff, contrary to a condition of the policy, failed to secure and inspect

---

[4] To fall within this exception to the waiver rule, an insurer-defendant must show not only that application of the waiver rule would expand the scope of coverage in theory, but that the specific loss suffered was one that would not have been within the policy's original scope of coverage. See *Kirschner*, 459 Mich at 594-595 (stating that the doctrine of waiver and estoppel cannot be applied so as to "make a contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy."). Thus, if plaintiff's loss was unrelated to a failure to secure and regularly inspect the building, defendant's failure to raise that failure in its initial denial letter would still constitute a waiver of the defense.

the building the doctrine of waiver does not apply. This is because the requirement to secure and inspect the building was one that required plaintiff to take pre-loss actions specifically intended to prevent or limit the type of loss for which it now claims coverage.

II.    WAS THERE A QUESTION OF FACT AS TO REGULAR INSPECTION

Because defendant is entitled to rely on the claimed failure to secure and inspect, we must determine whether the trial court erred by finding no question of fact as to whether plaintiff complied with these provisions. We agree with the trial court that plaintiff did establish a question of fact as to the building being secured but not as to it having been regularly inspected. The Vacancy Permit states:

In consideration of the premium charged, it is understood and agreed that Condition 6 (Vacancy) of the Loss Conditions of Policy Form CP 00 10 04 02 is deleted and replaced by the following:

(1) Permission is granted for the insured building(s) on the property set forth in the Declarations to be vacant or unoccupied during the period of this insurance, subject to the following warranties by the Insured:

- All doors, windows and other means of ingress into the insured building(s) shall be fully secured against unauthorized entry at all times during the policy period.

* * *

- The insured property shall be inspected regularly by the Insured or the Insured's agent during the policy period.

The Vacancy Permit clearly requires plaintiff to both secure the building and regularly inspect the building. The evidence regarding each requirement will be addressed in turn.

While the trial court found that plaintiff complied with the requirement to secure the building, on appeal, defendant argues that there was no genuine issue of material fact regarding plaintiff's lack of compliance with this requirement.[5] "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003). We agree with the trial court that there was sufficient evidence to create a genuine question of fact on this issue.

---

[5] In its reply brief, plaintiff argues that this Court should not consider this issue because defendant did not file a cross appeal. Plaintiff is incorrect; a prevailing party does not need to file a cross appeal to urge an alternative grounds for a lower court's ruling. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).

The Vacancy Permit required that plaintiff keep "[a]ll doors, windows and other means of ingress into the insured building(s) . . . fully secured against unauthorized entry at all times." Matty testified that, other than the front door of the building, every other door was bolted shut. Matty also testified that when he discovered the three-by three hole and the roof hole that they were covered by bricks and steel sheets respectively. Based on this testimony, there appears to be evidence that plaintiff complied with its obligations to secure the building under the Vacancy Permit. While the evidence also shows that vandals were ultimately able to gain access to the building, the mere fact that Matty's efforts to secure the building were unsuccessful does not in and of itself mean that he failed to comply with the policy's requirements. If the mere act of vandalism was sufficient evidence to show a failure to secure the building, then plaintiff would never be able to recover for a vandalism loss, and the policy explicitly states that vandalism loss is covered. Matty's testimony was sufficient for a reasonable trier of fact to conclude that plaintiff fulfilled its obligation to secure the premises under the Vacancy Permit. The trial court did not err in rejecting this argument.

The trial court did conclude, however, that there was no genuine issue of material fact and that plaintiff failed to meet its obligation to ensure that the property was "inspected regularly." At his deposition, Matty testified as follows concerning whether he made regular inspections of the property:

> Q. Did you conduct regular inspections of the property?
>
> A. No, I just, like I said, I would just go in there myself when I was showing the building to people and most of the time it was like once or twice every couple months, so --

Matty did not remember how many times he went into the building in December of 2012, but he did claim to walk by the front door every day. Matty was also the owner of a meat store adjacent to the vacant building, so he would casually view the property on his way to work every day. Matty further testified that the mayor of Highland Park also used to bring people in to see the building, but Matty acknowledged that he did not go along the alley behind the building because "[t]he alley is not the nicest place to walk."

Whether Matty's actions in showing the building to prospective purchasers once or twice every couple of months constitutes regularly inspecting the building, despite Matty's direct answer of "no" when specifically asked about regular inspections, turns on the interpretation of the policy's requirement that the property be "regularly inspected." The policy itself does not define this term, and we decline to adopt the extraordinarily flexible meaning suggested by plaintiff. Instead we conclude that "regularly inspect" means that the insured or his agent is to assess the subject property with the purpose of discovering any significant change in condition and that this inspection is to occur at generally consistent, albeit not precise, and reasonable intervals.[6]  Matty's deposition testimony that he and the mayor of Highland Park would go

---

[6] This Court can consult a dictionary to interpret undefined terms in an insurance policy. *Vushaj v Farm Bureau Gen Ins*, 284 Mich App 513, 515; 773 NW2d 758 (2009). *Merriam-Webster's*

inside the building in order to show the property to prospective buyers is not evidence of a critical appraisal at reasonable intervals. Similarly, walking by the front door of the property and casually viewing a portion of the outside of the property while working at a store adjacent to the subject property is not evidence of a careful assessment of its condition. Because plaintiff failed to present evidence to create a genuine issue of material fact on whether it complied with the requirement to regularly inspect the subject property in the Vacancy Permit, the trial court did not err in granting defendant's motion for summary disposition.

Affirmed. As prevailing party, defendant may tax costs.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

*Collegiate Dictionary* (11th ed) defines "inspect" as "to view closely in critical appraisal" and defines "regular" as "recurring, attending, or functioning at fixed, uniform, or normal intervals." *New Oxford American Dictionary* (3rd ed), defines the respective terms as "look at closely typically to assess . . . condition or to discover any shortcomings" and "doing the same thing or going to the same place frequently or at uniform intervals." *Webster's New Twentieth Century Dictionary of the English Language* (2nd ed) defines them respectively as "to look at carefully; to examine critically" and "consistent or habitual in action."