TASCA v GTE PRODUCTS CORPORATION

Docket Nos. 98599, 100845. Submitted October 14, 1988, at Detroit. Decided December 8, 1988.

Plaintiffs, James and Ruth Tasca, brought an action in the Macomb Circuit Court alleging that James Tasca developed allergic bronchitis as a result of his exposure to cobalt while working for Carboloy Systems Division of General Electric Company. GTE Products Corporation and thirteen other defendants were named in the suit, including several cobalt suppliers and numerous designers and manufacturers of the equipment used to grind the cobalt. Plaintiffs claimed that the cobalt suppliers were aware of the health risks posed by cobalt exposure but negligently failed to warn Tasca of the hazard. Plaintiffs also claimed that the equipment manufacturers and designers were liable for breach of implied warranty of merchantability because the machinery produced excessive amounts of cobalt dust without minimizing exposure thereto. Finally, plaintiffs alleged a claim for loss of consortium on behalf of Ruth Tasca. Defendant Afrimet-Indussa, Inc., filed a motion for summary disposition and, for purposes of the motion only, made concessions that (1) cobalt can be a hazardous substance when inhaled, (2) it was aware of the danger but Tasca was not, (3) it gave no warnings of the danger to either Tasca or Carboloy, and (4) Tasca's bronchitis was caused by inhaling cobalt dust while employed at Carboloy. Afrimet asserted, however, that it was not liable for Tasca's condition because, as a matter of undisputed fact, Carboloy was a sophisticated user of cobalt with knowledge of its dangers and was in a better position to warn Tasca. Afrimet insisted that it acted reasonably in relying on Carboloy to provide product warnings and safeguards to Tasca. Several other defendants then joined in Afrimet's motion. The trial court, Kathleen Jansen, J., on January 26, 1987, granted the movant-defendants summary disposition on plaintiffs' negligent failure to warn claim in an

REFERENCES

Am Jur 2d, Products Liability §§ 324-358.

Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.

opinion and order which stated that the undisputed evidence showed Carboloy to be a knowledgeable user of cobalt and that the movant-defendants justifiably relied upon Carboloy to warn Tasca of the dangers of cobalt. Plaintiffs appealed from that order. Following a hearing on a motion by the defendants for clarification of the court's order, the court, on May 4, 1987, entered an order stating that the January 26, 1987, order was a dismissal as to all the counts in the complaint as to all the defendants. Plaintiffs appealed from that order. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. The trial court properly granted defendants summary disposition on plaintiffs' negligent failure to warn claim. The trial court properly ruled, as a matter of law, that Carboloy was a sophisticated user of cobalt and was in the best position to warn of cobalt's dangers. The court also properly concluded that defendants acted reasonably in relying on Carboloy to provide those warnings to Tasca.

2. The trial court erred in dismissing plaintiffs' entire case pursuant to its order of May 4, 1987. The January 26, 1987, order dismissed only the claim for negligent failure to warn as to the named defendants. The portion of the May 4, 1987, order dismissing the entire case is reversed and plaintiffs' claims for breach of implied warranty of merchantability and loss of consortium are reinstated.

Affirmed in part and reversed in part.

1. PRODUCTS LIABILITY — FAILURE TO WARN.

The plaintiff in a products liability action, in order to establish a prima facie case of negligent failure to warn of a known danger, must show that (1) the defendant owed the plaintiff a duty to warn of the danger, (2) the defendant breached that duty, (3) the defendant's breach was the proximate and actual cause of the plaintiff's injury, and (4) the plaintiff suffered damages as a result.

2. PRODUCTS LIABILITY — DUTY.

The question, in a products liability action alleging negligent failure to warn, of whether there exists a duty to warn is a question of law for the court to decide.

3. NEGLIGENCE — PRODUCTS LIABILITY.

Liability is imposed on the supplier of a product which injures the user if (1) the product is defective or dangerous, (2) the supplier has no reason to believe the user will realize its defective or dangerous condition, and (3) the supplier cannot

reasonably rely on the purchaser or employer to warn the ultimate users of the product of the dangers; determinations concerning factor (3) are to be made after balancing the reliability of the employer as a conduit of necessary information about the product, the magnitude of risk involved, and the burdens imposed on the supplier by requiring it to directly warn the ultimate users.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *John L. Zorza, II*), for plaintiffs.

*Barbier, Petersmarck, Tolleson, Mead, Paige & Carlin, P.C.* (by *Neal W. Bauer* and *Christopher G. Manolis*), for GTE Products Corporation.

*Thurswell, Chayet & Weiner* (by *Gary M. Makrouer* and *Mary Pat Thomas*), for Herman C. Starck, Inc.

*Blum, Konheim, Elkin & Blum* (by *Irving R. Blum*), for Metallurgical Industries, Inc.

*Collins, Einhorn & Farrell, P.C.* (by *Dale J. McLellan* and *Noreen L. Slank*), for Thompson Grinding Division.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Michelle A. Thomas*), for Afrimet-Indussa, Inc.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore & Sills, P.C.* (by *Charles W. Browning*), for Powell Metals & Chemicals, Inc.

*Taylor & Braun, P.C.* (by *Thomas C. Jones*), for Brown & Sharpe Company.

Before: WEAVER, P.J., and MAHER and C. W. SIMON, JR.,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiffs, James and Ruth Tasca, husband and wife, appeal as of right from orders of the Macomb Circuit Court which granted summary disposition to defendants and dismissed plaintiffs' claims for negligent failure to warn, breach of implied warranty of merchantability, and loss of consortium. We affirm in part and reverse in part.

Plaintiff James Tasca began working for Carboloy Systems Division of General Electric Company on January 31, 1966. Carboloy manufactures carbide tools. During the course of his employment, Tasca worked at various positions. Between September, 1978, and January, 1982, he was a grinder of cemented tungsten carbide. He alleges that, while a grinder, he was exposed to the dust of the metallic element cobalt, which was used in the manufacturing process. Cobalt has been identified as causing certain pulmonary and respiratory ailments. In early 1982, Tasca was given a physical examination as part of an ongoing employee health program implemented and monitored by Carboloy. He was diagnosed at that time as being highly sensitive to cobalt dust. Consequently, he was transferred to a different position where he had almost no exposure to cobalt.

On January 25, 1985, plaintiffs filed a complaint with the Macomb Circuit Court alleging that Tasca developed allergic bronchitis (an inflammation of the mucous membranes of the bronchial tubes) as a result of his exposure to cobalt. Fourteen defendants were named in the suit, including several cobalt suppliers and numerous designers and manufacturers of the equipment used to grind the cobalt. Plaintiffs claimed that the cobalt suppliers were aware of the health risks posed by cobalt exposure but negligently failed to warn Tasca of the hazard. Plaintiffs also claimed that

the equipment designers and manufacturers were liable because the machinery produced excessive amounts of cobalt dust without minimizing exposure thereto. Finally, plaintiffs alleged a claim for loss of consortium on behalf of Ruth Tasca.

After answering the complaint, defendant Afrimet-Indussa, Inc., filed a motion for summary disposition under MCR 2.116(C)(8) and (10). For purposes of the motion only, Afrimet made the following concessions: (1) cobalt can be a hazardous substance when inhaled; (2) it was aware of the danger but Tasca was not; (3) it gave no warnings of the danger to either Tasca or Carboloy; and (4) Tasca's bronchitis was caused by inhaling cobalt dust while employed at Carboloy. But, Afrimet asserted that it was not liable for Tasca's condition because, as a matter of undisputed fact, Carboloy was a sophisticated user of cobalt with knowledge of its dangers and was in a better position to warn Tasca. Afrimet insisted that it acted reasonably in relying on Carboloy to provide product warnings and safeguards to Tasca. Several other defendants (GTE Products Corporation, Powell Metals & Chemicals, Inc., DeVlieg Machine Co., DoAll Detroit Company, DoAll Grand Rapids Company, Herman C. Starck, Inc., Thompson Grinding Division of Waterbury Farrel Subsidiary of Textron, Inc., and Brown & Sharpe Company) joined Afrimet's motion. Numerous documents were filed in support of the motion.

Oral arguments were heard on December 5, 1986. After considering all the documentary evidence, the trial court issued an opinion and order on January 26, 1987, stating that the undisputed evidence showed Carboloy to be a knowledgeable user of cobalt and that the movant-defendants justifiably relied upon Carboloy to warn Tasca of the dangers of cobalt. The court granted summary

disposition to the movant-defendants on plaintiffs' negligent failure to warn claim.

After issuance of the order, there was some confusion as to what effect it had on plaintiffs' remaining claims. The court clerk apparently treated it as a final order to dismiss the entire case; plaintiffs claimed an appeal as of right to this Court; the various defendants were uncertain whether any action was still pending against them. Because of the confusion, DoAll Detroit and DoAll Grand Rapids filed a motion for clarification of the order.

On April 20, 1987, a hearing on the clarification motion was conducted. At the conclusion of the hearing, the court stated:

> All right, let's proceed on that basis, that clarifies the court's opinion on January 26, 1987, that was a dismissal as to all the Counts in the Complaint to all defendants.

A new order to that effect was entered on May 4, 1987. Plaintiffs thereafter filed another appeal as of right from that order. The appeals were consolidated by the Court of Appeals.

The first issue on appeal is whether the trial court erred in granting summary disposition to several of the defendants on plaintiffs' negligent failure to warn claim. We hold there was no error.

In order to establish a prima facie case of negligent failure to warn of a known danger, the plaintiff in a products liability action must show that (1) the defendant owed the plaintiff a duty to warn of the danger, (2) the defendant breached that duty, (3) the defendant's breach was the proximate and actual cause of the plaintiff's injury, and (4) the plaintiff suffered damages as a result. *Pettis v Nalco Chemical Co,* 150 Mich App 294, 299; 388

NW2d 343 (1986), lv den 426 Mich 881 (1986); *Warner v General Motors Corp,* 137 Mich App 340, 348; 357 NW2d 689 (1984), lv den 422 Mich 852 (1985). The dispute in the instant appeal concerns factor (1), i.e., whether the defendants had a duty to warn Tasca of the dangers of inhaling cobalt dust.

The question whether there exists a duty to warn is one of law for the court to decide. *Antcliff v State Employees Credit Union,* 414 Mich 624, 640; 327 NW2d 814 (1982), reh den 417 Mich 1103 (1983); *Pettis, supra,* p 302. Generally, the duty to warn extends to all dangers associated with both intended uses and foreseeable uses. *Antcliff, supra,* pp 637-638. However, there is no duty to warn of dangers which are obvious to all. *Fisher v Johnson Milk Co, Inc,* 383 Mich 158, 160; 174 NW2d 752 (1970).

One who supplies a dangerous product to another through a third person may or may not have a duty to warn the ultimate user of the product's dangers. The test for determining the existence of a duty in such a situation is embodied in 2 Restatement Torts, 2d, § 388, pp 300-301:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Stated differently, § 388 imposes liability on the supplier of a product which injures the user if (1) the product is defective or dangerous, (2) the supplier has no reason to believe the user will realize its defective or dangerous condition, and (3) the supplier cannot reasonably rely on the purchaser/employer to warn the ultimate users of the product of the dangers. *Goodbar v Whitehead Bros,* 591 F Supp 552, 556 (WD Va, 1984), aff'd sub nom *Beale v Hardy,* 769 F2d 213 (CA 4, 1985). As previously mentioned, defendants conceded—for purposes of their summary disposition motion— that cobalt can be dangerous when inhaled and that Tasca was unaware of this danger. Those concessions concern factors (1) and (2), above. Hence, defendants can avoid liability only if they acted reasonably in relying on Carboloy to warn Tasca of the dangers of cobalt. That determination, in turn, can be made only after balancing the following considerations: the reliability of the employer as a conduit of necessary information about the product; the magnitude of risk involved; and the burdens imposed on the supplier by requiring it to directly warn the ultimate users. See *Oman v Johns-Manville Corp,* 764 F2d 224, 233 (CA 4, 1985). The reason for weighing the above considerations, and not merely imposing an absolute duty to warn, is that "[m]odern life would be intolerable unless one were permitted to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so." 2 Restatement Torts, 2d, § 388, comment n, p 308.

In the instant case, defendants submitted volumes of documentary evidence showing that Carboloy was a sophisticated user of cobalt, that they

were not in a position to effectively warn Tasca of the dangers, and that they reasonably relied on Carboloy to provide the warnings. Beginning in the early 1940s, Carboloy suspected that cobalt could be harmful when inhaled. The company therefore commissioned extensive studies to determine the nature and degree of harm. Moreover, since that time, Carboloy has employed a physician to care for its employees. Through that early research, it was learned that inhalation of tungsten carbide and cobalt could lead to bronchitis, bronchiolitis, asthma and other pulmonary and respiratory diseases. In the mid-1950s, Carboloy began taking measures to minimize exposure to cobalt dust and instituted a program of annual health checkups for employees. Carboloy maintained a library of current medical information concerning the hazards of airborne cobalt and the means for controlling exposure thereto. In January, 1974, Carboloy published a handbook which warned: "A small percentage of individuals who are exposed to such carbide dusts or mists may be susceptible to developing pulmonary problems as a result of the inhalation of even small amounts of particulate substances." Also in 1974, a safety newsletter was distributed to employees cautioning that "[a]lmost all carbide products contain cobalt [and] these fine particulate metals may contribute to the development of pulmonary disorders as a result of inhalation in those persons who are sensitive to it." Beginning in 1975, Carboloy conducted quarterly safety meetings for its employees. In 1979, it began posting bar graphs in each foreperson's office which graphically displayed the cobalt levels in that department. To argue that Carboloy did not have the proper sophistication in dealing with cobalt exposure is "nothing short of amazing." *Goodbar, supra,* p 565.

In addition to the general protective measures, Carboloy monitored Tasca's pulmonary health—as it did every employee's health—from the very beginning of his employment. This was done through periodic x-rays and physical examinations. Either a physical examination or a pulmonary function test was administered to Tasca during almost every year of his employment. In 1970, eight years before Tasca began working as a grinder, Carboloy conducted a "modified x-ray program" on Tasca. He was notified by letter that an abnormal lung condition had been detected. A similar letter was also sent to Tasca's personal physician, which stated that the x-ray revealed a possible airway obstruction. Tasca participated in another pulmonary health study in 1977. At this time, he underwent a battery of tests, including a urinalysis, blood test, blood pressure and pulse test, and electrocardiogram. On six different occasions between February, 1977, and October, 1984, he was given questionnaires for the purpose of identifying his susceptibility to chronic bronchitis. The results of the physical examinations and questionnaires were reported to Tasca by letters. On January 8, 1982, Tasca was referred to a specialist at Henry Ford Hospital in order to confirm or rule out the existence of hypersensitivity bronchitis. When Tasca was diagnosed as having allergic bronchitis, Carboloy transferred him to a new department where he had almost no exposure to cobalt.

In the documentary evidence supporting the summary disposition motion, defendants claimed they were aware of Carboloy's reputation in the metal industry as a sophisticated and knowledgeable user of cobalt. Defendants further believed that Carboloy had taken measures to protect its employees, through research efforts, employee

health programs and compliance with state and federal safety standards, from the dangers of cobalt. Those allegations were not refuted by plaintiffs.

Defendants also submitted affidavits which established that they had no direct access to employees in the grinding operation. Although cobalt is packaged in canisters (making it possible to affix warning labels), it was fashioned into a rough-finished product by the time it reached Tasca. Not only did Tasca not handle the raw material, it was unlikely that he would have ever seen the canisters since the grinding operation was housed in a separate building one-quarter mile away from the receiving and mixing areas. Further, once the cobalt was mixed, the canisters and labels were destroyed. Finally, affidavits indicated that Carboloy would not have allowed defendants into its plant to orally warn the employees of cobalt's dangers or to distribute literature containing such warnings.

Based upon all the documentary evidence submitted by defendants in support of their summary disposition motion, the trial court properly found that Carboloy was a sophisticated user of cobalt and was in the best position to warn of cobalt's dangers. The court also rightly concluded from the evidence that defendants acted reasonably in relying on Carboloy to provide those warnings to Tasca. Plaintiffs do not challenge the factual content of defendants' documentary evidence; rather, they dispute the trial court's ability to draw legal conclusions therefrom. The court did not err in taking the matter away from the jury. Because the duty owed by a defendant to a plaintiff is a question of law for the court to decide, the trial court properly made a ruling on that question as a matter of law.

In a related argument, plaintiffs claim that the trial court abused its discretion in allowing several of the defendants to join in Afrimet's motion for summary disposition. Plaintiffs assert that the defendants should have been required to file formal motions pursuant to MCR 2.119(A). We decline to review the merits of this argument. Plaintiffs did not object to the court's actions below and raise it now for the first time. The issue has therefore not been preserved for appeal. *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 408; 418 NW2d 478 (1988).

The next issue raised on appeal is whether the trial court erred in dismissing plaintiffs' entire case pursuant to its order of May 4, 1987. We can only conclude that the court did in fact err.

In its opinion and order of January 26, 1987, the trial court granted summary disposition to defendants, stating:

> Defendants' motion for summary disposition on plaintiff's duty to warn claim should be and the same hereby is GRANTED. Accordingly, *the failure to warn claims* in plaintiff's complaint as to defendants Afrimet-Indussa, Inc., GTE Products Corp., Powell Metals & Chemicals, Inc., Brown & Sharpe Co., Devlieg Machine Co., Doall Detroit Company, Doall Grand Rapids Company, Herman C. Starck, Inc. and Thompson Grinding, ONLY, *should be and the same hereby are DISMISSED.* [Emphasis added.]

Clearly, that opinion and order operated to dismiss only plaintiffs' claim for negligent failure to warn as to the named defendants. The opinion and order did not dispose of plaintiffs' claims for breach of implied warranty or loss of consortium. Accordingly, that portion of the May 4, 1987, order dismissing the entire case must be reversed and plaintiffs' claims for breach of implied warranty and loss of consortium are reinstated.

Affirmed in part and reversed in part.