**Corrine M. BURT; Duane N. Burt; Darleen A. Dronchi; Joseph Dronchi; Joy K. Router; Irma Rodriguez; and Elias Rodriguez, Plaintiffs,**

v.

**FUMIGATION SERVICE AND SUPPLY, INC., a foreign corporation, and Great Lakes Chemical Corporation, a foreign corporation, Defendants.**

No. 1:95 CV 459.

United States District Court, W.D. Michigan.

May 21, 1996.

John C. Buchanan, Buchanan, Silver & Beckering, Grand Rapids, MI, for Corrine M. Burt, Duane N. Burt, Darleen A. Dronchi, Joseph Dronchi, Joy K. Router, Irma Rodriguez, Elias Rodriguez.

Howard Patrick Morris, Johnson & Bell, Ltd., Chicago, IL, Frederick D. Dilley, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, for Fumigation Service and Supply, Inc.

James W. Smith, Dietrich, Zody, Howard & Vander Roest, Kalamazoo, MI, Larry R. Fisher, David A. Starkweather, Stuart & Branigin, Lafayette, IN, for Great Lakes Chemical Corporation.

---

## OPINION

ENSLEN, Chief Judge.

This matter comes before the Court on defendant Great Lakes Chemical Company's ("Great Lakes'") motion for summary judgment. Great Lakes seeks dismissal of the complaint filed by plaintiffs Corrine M. Burt, Duane N. Burt, Darleen A. Dronchi, Joseph Dronchi, Joy K. Router, Irma Rodriguez and Elias Rodriguez ("plaintiffs") for damages incurred as a result of Fumigation Service and Supply, Inc.'s ("Fumigation's") fumigation of a building using a Great Lakes product containing methyl bromide gas.

Great Lakes is a Delaware corporation with its principle place of business in Indiana. Fumigation is an Indiana corporation with its principle place of business also in Indiana. Plaintiffs are Michigan residents. Although plaintiffs raise no federal claims, the parties are of diverse citizenship and the amount in controversy exceeds $50,000. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## FACTS

On or about October 4, 1992, Fumigation fumigated a building at the Gerber Products Company in Freemont, Michigan, ("Gerber") using a Great Lakes product called Meth–O–Gas. Meth–O–Gas is the trade name for a 100% methyl bromide pesticide. Methyl bromide is a colorless, odorless, tasteless gas that does not irritate human skin or eyes. It is used to fumigate commodities such as fruits, nuts and grains. The gas dissipates rapidly after use, leaving no residue. The United States Environmental Protection Agency (EPA) classifies methyl bromide as a Restricted Use Pesticide. As a Restricted Use Pesticide, the agent may only be purchased and used by or under the direct supervision of certified applicators. *See* 40 C.F.R. § 152.175. Inhalation of methyl bromide can be fatal or cause serious acute illness or delayed lung and nervous system injury. Exposure to toxic levels may occur without warning or detection.

Plaintiffs Corrine Burt, Darleen Dronchi, Joy Router and Irma Rodriguez were employees of Gerber working at the time of the fumigation. While answering telephones in a building near the one being fumigated, they became ill and continue to suffer. They, and three spouses, brought the instant suit against Fumigation and Great Lakes claiming that the methyl bromide caused their personal injuries. Plaintiffs assert claims in negligence, breach of warranty and loss of consortium against Great Lakes. The crux of plaintiffs' complaint against Great Lakes is that Meth–O–Gas is defective because it is not safe and fit for foreseeable use and misuse in that, inter alia, the product lacks a "warning agent" to alert anyone to exposure.

### Standard

■ In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial

on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir. 1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

## DISCUSSION

Great Lakes brings this motion on the grounds that: 1) all of plaintiffs' claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq.; 2) Great Lakes had no duty to warn plaintiffs under the "sophisticated user" doctrine; 3) plaintiffs' design defect theory cannot support a verdict in plaintiffs' favor as a matter of law.

## PRE–EMPTION

■ The doctrine of federal pre-emption is founded on the Supremacy Clause, United States Constitution art. VI, cl. 2. Federal laws are the supreme law of the land; thus, any "state law that conflicts with federal law is 'without effect.' " *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992) (citation omitted).

■ A state law is pre-empted when: 1) Congress expresses a clear intent to preempt state law; 2) when there is outright or actual conflict between the federal and the state law; 3) when compliance with federal and state law is effectively impossible; 4) where there is an implicit federal barrier to state regulation; 5) where Congress has occupied the entire field of regulation; 6) where state law "stands as an obstacle" to the objectives of Congress. *Louisiana Public Serv. Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986) (citations omitted). The key question is whether Congress intended to pre-empt state law.

Congressional intent may be express or implied:

> Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose.... In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law ..., or of federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' "

*Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617. "Absent express pre-emption, courts are not to infer pre-emption lightly, particularly in areas traditionally of core concern to the states such as tort law." *Burke v. Dow Chemical Co.,* 797 F.Supp. 1128, 1136 (S.D.N.Y.1992) (citing *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 144, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). This is because the pre-emption doctrine presumes that police powers historically left to the states are not supplanted by federal law. *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617.

**Express Pre-emption: 7 U.S.C. § 136v(b)**

Great Lakes contends that FIFRA contains an express pre-emption provision codified at 7 U.S.C. § 136v which precludes consideration of plaintiffs' causes of action. Seven U.S.C. § 136v provides in part:

(a) In general

A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labelling or packaging in addition to or different from those required by this subchapter.

In *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 613, 111 S.Ct. 2476, 2485–86, 115 L.Ed.2d 532 (1991), the Supreme Court noted that § 136v was an express pre-emption provision. The provision supported the Court's finding that FIFRA did not pre-empt

the entire field of pesticide regulation, for § 136v indicated an intent to pre-empt only some aspects of pesticide regulation. *Id.* The Court went on to hold that FIFRA does not expressly or impliedly pre-empt local government *use* permit regulations. The precise scope of § 136v, including whether § 136v pre-empts common law causes of action, was left for the lower courts to resolve.

Since the Supreme Court's opinion in *Cipollone,* a case dealing with the Public Health Cigarette Smoking Act (PHCSA), 15 U.S.C. § 1331–1340, the majority of decisions interpreting FIFRA hold that § 136v expressly pre-empts some common law causes of action. *See, e.g., Reutzel v. Spartan Chemical Co.,* 903 F.Supp. 1272, 1280 (N.D.Iowa 1995) (citing a litany of cases throughout the federal circuits). In *Cipollone,* the plaintiff filed a state common law tort action against cigarette manufacturers for failure to warn consumers of the hazards of smoking. The defendant cigarette manufacturers contended that the PHCSA pre-empted the state law claims. That is, Congress intended even common law claims for damages to be pre-empted.

Section 1334(b) of the PHCSA provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." A plurality of the Supreme Court held that "[t]he phrase no 'requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Cipollone,* 505 U.S. at 522, 112 S.Ct. at 2620. Therefore, some of the plaintiff's claims were expressly preempted. The plurality then set forth a test to determine the scope of a statute's pre-emptive effect: "[W]e ask whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' giving that clause a fair but narrow reading." *Id.* at 524, 112 S.Ct. at 2621. The plurality concluded that the plaintiff's

failure to warn claims were pre-empted, but claims based "solely on respondents' testing or research or other actions unrelated to advertising or promotion" were not pre-empted. *Id.* at 524–25, 112 S.Ct. at 2621–22.

Turning to § 136v of FIFRA, federal courts uniformly hold that subsection (b)'s "not ... any [state] requirement" language indicates pre-emption of some state common law actions just as *Cipollone* found the PHCRA's "no [state] requirement" indicates preemption of some state common law actions. That is, "not any" means the same thing as "no," and "requirement" includes state common law damages actions. *See, e.g., Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 72 (8th Cir.1995); *Taylor v. AG Industries v. Pure–Gro,* 54 F.3d 555, 560 (9th Cir.1995); *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1025 (5th Cir.1994); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 747–48 (4th Cir.1993) ("*Worm II*"); *King v. E.I. DuPont de Nemours and Co.,* 996 F.2d 1346, 1349 (1st Cir.), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir.1993); *Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.) ("*Papas II*", *cert. denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.), *cert. denied,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993). The Sixth Circuit has not yet addressed the question. This Court finds this much of the language in FIFRA effectively indistinguishable from that in the PHCRA.

The remaining question is which of plaintiff's claims are pre-empted by § 136v. Under *Cipollone,* this Court must give the pre-emption provision a "fair but narrow reading." *Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621. The plain terms of § 136v limit pre-emption to state "requirements for labelling and packaging in addition to or different from" FIFRA's. The legislative history reiterates a Congressional intent to deprive states only of authority related to packaging and labelling:

In dividing the responsibility between the States and Federal Government for the management of an effective pesticide program, the Committee has adopted language which is intended to completely preempt State authority in regard to labelling and packaging.... In the case of 'restricted use' pesticides the States are left free to impose whatever restrictions they may wish (other than labelling and packaging). The States could also completely prohibit the use of these 'restricted use' pesticides within their jurisdictions.

H.R.Rep. 92–511, 92d Cong., 1st Sess. 16 (1971). It was Congress' intent to pre-empt "any State labelling or packaging requirements differing from such requirements under the Act." S.Rep. 92–838, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 3993, at 4021.

■ Hence, FIFRA pre-empts "any state common law cause of action that rests on an alleged failure to warn or convey information about a product through its label." *In re DuPont–Benlate Litigation*, 859 F.Supp. 619, 622 (D.Puerto Rico 1994) (citing *King*, 996 F.2d at 1349); *Worm II*, 5 F.3d at 747; *Shaw*, 994 F.2d at 371); *Papas*, 985 F.2d at 518); *Arkansas–Platte & Gulf Partnership*, 981 F.2d at 1179)). But claims unrelated to labelling, such as those founded on the testing, manufacturing or formulating of the pesticide, are not pre-empted. *See Worm II*, 5 F.3d at 747. *See also, Wright v. Dow Chem. Co.*, 845 F.Supp. 503, 510 (M.D.Tenn.1993); *Hurt v. Dow Chem. Co.*, 759 F.Supp. 556, 560 (E.D.Mo.1990); *Kennan v. Dow Chem. Co.*, 717 F.Supp. 799, 812 (M.D.Fla.1989). This follows from the language and legislative history.

■ Seven U.S.C. § 136(p) defines label and labelling as follows:

(1) Label.—The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

(2) Labelling.—The term "labelling" means all label and all other written, printed, or graphic matter—

(A) accompanying the pesticide or device at any time; or

(B) to which reference is made on the label or in literature accompanying the pesticide....

Labelling materials need not be fixed to the pesticide. Indeed, in *Kordel v. United States*, 335 U.S. 345, 348, 69 S.Ct. 106, 108, 93 L.Ed. 52 (1948), the Supreme Court interpreted the words "accompanying such article" in the Food Drug and Cosmetic Act's definition of labelling to include material instructing end-users—whether or not the material was physically proximate to the product. *See* 21 U.S.C. § 301 *et seq.* "One article or thing is accompanied by another when it supplements or explains it.... No physical attachment one to the other is necessary. It is the textual relationship that is significant." *Id.* at 350, 69 S.Ct. at 110. FIFRA uses essentially the same language in its definition for labelling, and Congress has revisited FIFRA several times without seeing fit to adjust these terms despite *Kordel's* implications for the language chosen.

■ For circumstances where it is not clear whether the claim is pre-empted as related to labelling, the courts have devised a simple test. The primary means for determining the line between a pre-empted claim and a permissible claim is "whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label." *Worm II*, 5 F.3d at 747–48. *See also, Hue v. Farmboy Spray Co.*, 127 Wash.2d 67, 896 P.2d 682 (1995); *Clubine v. American Cyanamid Co.*, 534 N.W.2d 385 (Iowa 1995); *Jenkins v. Amchem Prods., Inc.*, 256 Kan. 602, 886 P.2d 869 (1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995).

The inquiry now properly turns to the complaint.

### Negligence

Plaintiff alleges three theories of negligence in Count III:

1) Failure to properly warn and instruct the product user regarding safe use, foreseeable personal injuries or of the product's toxicity;

2) Failure to properly design, formulate, and manufacture the pesticide with a

chemical warning agent to alert those exposed to the dangerous chemical;

3) Failure to properly design, formulate, and manufacture the pesticide so that it would be reasonably safe for its foreseeable use and misuse.

■ Plaintiffs' first negligence claim qualifies as a failure to warn claim. *See Antcliff v. State Employees Credit Union,* 414 Mich. 624, 327 N.W.2d 814 (1982). This Court finds the claim pre-empted. The instructional and informational material for users falls into the plain terms of FIFRA's definition of labelling.[1]

The Court reads the remainder of Count III as alleging design defect claims under two different rationales: first, that Great Lakes could have designed a more safe methyl bromide product with a warning agent, and second, even if a warning agent could not be added, it was negligent to sell Meth–O–Gas as currently designed because it fails the risk utility analysis applied in Michigan. Although there is no Michigan authority directly addressing the issue, courts generally rely upon 2 Restatement of Torts, 2d, § 388 at 300–01 (1965) in treating a claim based on the failure to include a warning agent in the product as a breach of the duty to warn claim. *See, e.g., Hayes v. Kay Chem. Co.,* 135 Ill.App.3d 932, 90 Ill.Dec. 632, 482 N.E.2d 611 (1985) (lack of coloring agent in toxic liquid); *Morrissey v. Conservative Gas Corp.,* 285 A.D. 825, 136 N.Y.S.2d 844 (N.Y.App.Div.1955) (Schmidt, J., Beldock, J., dissenting on other grounds) (lack of odorant in propane gas; relying on Restatement (First) of Torts), *aff'd,* 1 N.Y.S.2d 741, 152 N.Y.S.2d 289, 135 N.E.2d 45 (1956). Hence there is a defective design claim based on the failure to include feasible warnings, and a defective design claim that, even if a warning is not feasible, the product is otherwise defectively unsafe without such a warning agent. *See e.g.,* 2 Restatement of Torts, 2d § 520, comment b ("[I]f the utility of the activity does not justify the risk it creates, it may be negligence merely to carry it

on: . . . ."). This reading of plaintiffs' complaint is consistent with Michigan's recognition of the alternative theories for design defect claims. *See Gregory v. Cincinnati, Inc.,* 450 Mich. 1, 11, 538 N.W.2d 325 (1995).

■ This Court holds that FIFRA does not expressly pre-empt plaintiffs' design defect theory premised on the failure to include a warning agent in Meth–O–Gas. While the claim may be characterized as one for breach of the duty to warn, plaintiffs bystanders do not here contend that any duty of care owed them by the manufacturer of this colorless, odorless, tasteless, non-irritating toxic gas could be satisfied with additional or different labelling material. *Cf. Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621 (provision governing advertising and promotional material pre-empted only duty to warn claims requiring a showing that *promotional and advertising material* should have included additional or more clearly stated warnings). The claim alleges that the defect requires a change in the product and not the labelling. *See Worm II,* 5 F.3d at 747–48. To hold FIFRA pre-empts this bystander claim would not be a "fair but narrow" reading of FIFRA's express pre-emption provision. *Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621. *Cf. also, Wisconsin Public Intervenor,* 501 U.S. at 603, 111 S.Ct. at 2480–81 (local ordinance requiring fumigators to post placards giving notice of pesticide use not pre-empted by FIFRA); *Kordel,* 335 U.S. at 348, 69 S.Ct. at 108 (noting that labelling materials are for those who purchase or handle the product); *New York Pesticide Coalition, Inc. v. Jorling,* 874 F.2d 115 (2d Cir.1989) (state regulation of warnings to bystanders not preempted by FIFRA).

■ Similarly, the claim that Meth–O–Gas, even if a warning agent is not feasible, fails the risk utility analysis as currently designed is not a claim for failure to warn through labelling. Therefore, it also is not expressly pre-empted. *See Worm II,* 5 F.3d at 747–48; *Wright,* 845 F.Supp. at 511. Of course, in addressing pre-emption, this Court

---

1. Plaintiffs do not allege a failure to instruct Fumigation regarding state or local requirements for use, such requirements for use not having been pre-empted. *See* supra. It is unlikely such

a duty may be assigned to a supplier under FIFRA, although the Court need not address the question in this case.

states no opinion on whether the claims may be sustained as a matter of state law. *See Cipollone*, 505 U.S. at 524, 112 S.Ct. at 2621.

## Implied Pre-emption

Great lakes also contends that plaintiffs' claim based on a lack of a warning agent actually conflicts with federal requirements, a form of implied pre-emption. *See Cipollone*, 505 U.S. at 516, 112 S.Ct. at 2617; *Louisiana Public Service Com.*, 476 U.S. at 368–69, 106 S.Ct. at 1898–99. Indeed, when the Supreme Court examined FIFRA it suggested that provisions other than § 136v(b) might imply pre-emption. *See Wisconsin Public Intervenor*, 501 U.S. at 613–615, 111 S.Ct. at 2486 ("[L]ocal use permit regulations—unlike labelling *or certification*—do not fall within an area that FIFRA's 'program' pre-empts or even plainly addresses.") (emphasis added).

Great Lakes insists that the Environmental Protection Agency (EPA) forbids the inclusion of a warning agent for Meth–O–Gas. Meth–O–Gas, unlike many other methyl bromide products, is used for fumigating commodities. Great Lakes provides an affidavit to the effect that while methyl bromide dissipates rapidly, the commonly used warning agent, chlorpicrin, leaves a toxic residue. Hence, Meth–O–Gas has remained 100% methyl bromide.

However, the EPA regulatory position and rationale provided by plaintiffs states: "The Agency is not requiring that chlorpicrin be added to commodity fumigation uses because there is a possibility that residues of chlorpicrin remain in treated products, and no tolerances for chlorpicrin have been established." Pltffs exh. 6. Plaintiffs' EPA Response Statement reveals that the EPA has not yet approved a chlorpicrin tolerance level because no manufacturer has submitted any such testing or requested consideration of a tolerance level. Plaintiffs also allege that warning agents other than chlorpicrin could be used.

■ While 7 U.S.C. § 136v(c)(3) provides that states *cannot* register a pesticide for use on food or feeds unless a tolerance level or appropriate exemption exists for any residue,

that is a different question than whether a manufacturer was negligent for failing to request or establish a tolerance level or whether the product without a warning agent is nevertheless not defective. Pre-emption is not an inquiry into the merits. Furthermore, states are free to require that a "restricted use" pesticide such as methyl bromide be used with a warning agent or not at all: "In the case of 'restricted use' pesticides the States are left free to impose whatever restrictions they may wish (other than labelling and packaging). The States could also completely prohibit the use of these 'restricted use' pesticides within their jurisdictions." H.R.Rep. 92–511, 92d Cong., 1st Sess. 16 (1971). Hence, the merits aside, the plaintiffs' negligence claims are not pre-empted, for common law claims are simply another means of state regulation. *Cipollone*, 505 U.S. at 522, 112 S.Ct. at 2620.

Great Lakes does not suggest that any of the numerous other aspects of pesticide control addressed by FIFRA impliedly pre-empt plaintiffs' negligent design claims. These provisions "reflect the general goal of the 1972 amendments to strengthen existing labelling requirements and ensure that these requirements were followed in practice." *Wisconsin Public Intervenor*, 501 U.S. at 613, 111 S.Ct. at 2486. Accordingly, Great Lakes has not met its summary judgment burden for demonstrating that plaintiffs' remaining negligence claims should be dismissed as pre-empted. Registration of a pesticide does not preclude as pre-empted a claim that the product is defectively unsafe as manufactured or formulated. *See Worm II*, 5 F.3d at 747; *Wright*, 845 F.Supp. at 511.

### Breach of warranty

In Count IV, plaintiff assert breach of implied and express warranties.

■ In this case, the express warranty claim appears to be only significant to the extent of the relevancy of any efforts by Great Lakes to disclaim implied warranties because plaintiffs allege no more than an express warranty of suitability. *See* 1 James J. White and Robert S. Sommers, *Uniform Commercial Code*, § 9–4 at 490 n. 23 (4th ed. 1995). Because plaintiffs concede that they neither saw nor heard of any labelling, the

express warranty claim is superfluous and will be dismissed. *See Wright,* 845 F.Supp. at 511 (disclaimers of implied warranties ineffective against those who never saw them).

▮ The implied warranty claim, in turn, is also superfluous. While breach of implied warranty and negligence are separate theories of liability, *see Prentis v. Yale Manufacturing Co,* 421 Mich. 670, 691, 365 N.W.2d 176 (1984), Michigan law holds that a negligence instruction covers all that the breach of implied warranty instruction would cover when a *design* defect claim is made against a manufacturer. *Id. See also, Gregory,* 450 Mich. at 12–13, 538 N.W.2d 325; *Smith v. E R Squibb & Sons,* 405 Mich. 79, 89–91, 273 N.W.2d 476 (1979). Hence, it is proper to dismiss such implied warranty claims in advance of trial to avoid confusing the jury. *See Carlson v. Bic Corp.,* 840 F.Supp. 457, 467 (E.D.Mich.1993) (citing *Prentis* ).

## SOPHISTICATED USER

Great Lakes contends, in the alternative to its pre-emption arguments, that it owed no duty to warn plaintiffs under the sophisticated user defense. Great Lakes sold the Meth–O–Gas to Fumigation, a certified user of methyl bromide, which then engaged in the fumigating that allegedly injured plaintiffs bystanders. Great Lakes asserts that as a matter of law it could rely on Fumigation to disseminate any warnings to bystanders because Fumigation was in a better position to do so.

▮ Michigan courts follow 2 Restatement of Torts, 2d § 388 in defining a supplier's duty to warn of dangerous products. *See, e.g., Newson v. Monsanto Co.,* 869 F.Supp. 1255, 1259 (E.D.Mich.1994); *Tasca v. GTE Prods. Corp.,* 175 Mich.App. 617, 622, 438 N.W.2d 625 (1988). The Restatement defines the duty as follows:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other *or to be endangered by its probable use,* for physical harm caused by the use of the chattel in

the manner for which and by a person for whose use it is supplied, if the supplier

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

2 Restatement of Torts, 2d § 388 at 300–01 (emphasis added). If the words are not already clear enough, the commentary specifically explains that the duty extends to bystanders:

> One supplying a chattel to be used or dealt with by others is subject to liability under the rule stated in this Section, not only to those for whose use the chattel is supplied but *also to third persons whom the supplier should expect to be endangered by its use.*

2 Restatement Torts, 2d, § 388 comment d at 303 (emphasis added).

▮ The sophisticated user defense is derived from comment k of § 388. *See Aetna Cas. & Surety Co. v. Ralph Wilson Plastics Co.,* 202 Mich.App. 540, 547–48, 509 N.W.2d 520 (1993); *Tasca,* 175 Mich.App. at 624, 438 N.W.2d 625. *See also, Newson,* 869 F.Supp. at 1259. That is, a supplier defendant may reasonably rely on a user or purchaser to warn others.

▮ Comment n provides factors which govern when the supplier exercises reasonable care in relying on a user or purchaser to give warnings. *See* 2 Restatement 2d, § 388, comment I at 307. As the court in *Tasca* held, whether a supplier may rely on a user or purchaser to give the necessary warnings depends upon balancing several considerations: "the reliability of the [third party] as a conduit of necessary information about the product; the magnitude of the risk involved; and the burdens imposed on the supplier by requiring it to directly warn the [plaintiffs]." *Tasca,* 175 Mich.App. at 624, 438 N.W.2d 625 (quoted in *Newson,* 869 F.Supp. at 1259).

But comment n provides additional helpful instruction:

> *Giving to the third person through whom the chattel is supplied all the information necessary for its safe use is not in all cases sufficient to relieve the supplier from liability* .... The question remains whether this method gives reasonable assurance that the information will reach those whose safety depends upon their having it....
>
> Even though the supplier has no practicable opportunity to give this information directly and in person ..., it is not unreasonable to require him to make good any harm which is caused by his using [an] unreliable ... method of giving the information which is obviously necessary to make the chattel safe for those who use it and those in the vicinity of its use....
>
> [I]f the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information even to a person whom he has good reason to believe to be careful. *Many such articles can be made to carry their own message* ....

2 Restatement 2d, § 388, comment n at 308–10 (emphasis added). The Court finds that neither party has correctly stated the rule, and that there are unbriefed issues of fact precluding summary judgment in Great Lakes' favor. For example, the burden on Great Lakes and the magnitude of risk have not been briefed. *See Tasca*, 175 Mich.App. at 624, 438 N.W.2d 625.

In addition, Great Lakes does not argue, and this Court does not hold, that necessarily there can be no negligence on the part of a manufacturer where the EPA has registered a pesticide without subsequently cancelling or suspending that registration. *See* 7 U.S.C. § 136d. "As a general rule, compliance with federal standards does not, in and of itself, immunize a manufacturer or retailer from state tort law liability." *Burke*, 797 F.Supp. at 1142. *See also*, 2 Restatement of Torts, 2d § 288C (Generally, "[c]ompliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable [person] would take additional precautions.").

## FEDERAL VIABILITY OF DESIGN DEFECT CLAIM

Great Lakes' third line of defense is that plaintiffs cannot maintain a design defect claim as a matter of law because plaintiffs are demanding that Great Lakes do what federal law forbids, which would subject Great Lakes to federal civil and criminal penalties. *See.* 7 U.S.C. § 136*l*. This is a restatement of earlier arguments. Great Lakes again relies on its apparent understanding that the EPA forbids warning agents in methyl bromide products used for fumigating commodities, whereas the evidence before the Court indicates that the EPA does not require such agents and that the EPA would entertain requests for registration of a product with a warning agent. A negligence claim does not require Great Lakes to actually change its product; and, there has been no briefing on the merits. Nor does Great Lakes account for the authority of a state to forbid or provide damage claims for certain uses of pesticides even when the EPA permits such uses.

## CONCLUSION

Great Lakes' motion for summary judgment will be granted in part. Plaintiffs' claims regarding instructing and warning users must be dismissed as pre-empted. *See* Complaint ¶ 50(c)–(e). Plaintiffs' superfluous implied and express warranty claims will also be dismissed. *See* Complaint ¶¶ 52–57. The remaining negligent design claims stand for the time being, for no other arguments for dismissal have been raised.

### *PARTIAL JUDGMENT*

In accordance with the Opinion entered on this date;

**IT IS HEREBY ORDERED** that defendant Great Lakes Chemical Corporation's motion for summary judgment (dkt. # 32) is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that plaintiffs' claims in ¶ 50(c)–(e) relating to failure to

properly instruct are **DISMISSED** as pre-empted by federal law.

**IT IS FURTHER ORDERED** that plaintiffs' expressed and implied warranty claims alleged in ¶¶ 52–57 of the Complaint are **DISMISSED** as superfluous and likely to confuse the jury.

**IT IS FURTHER ORDERED** that in all other respects, the motion is **DENIED.**